# IN RE BARRATT'S APPEAL.

### PATENTS; RES JUDICATA.

1. After an application for a patent has been finally rejected and the applicant's right of appeal exhausted, an appeal will not lie to this court from a decision of the Commissioner of Patents rejecting a second application for a patent for the same invention.

2. The fact that the drawings and specifications attached to such second application are more full and satisfactory than those attached to the first application, will not justify the filing of the second application, or give the right of appeal from a decision of the Commissioner rejecting it.

No. 114.  Patent Appeals.  Submitted January 11, 1899.  Decided February 9, 1899.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for a patent. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Phillip Mauro* and *Mr. M. D. Peck* for the appellant.

*Mr. W. A. Megrath* for the Commissioner of Patents.

Mr. Justice MORRIS delivered the opinion of the Court:

On February 28, 1896, the present applicant, William T. Barratt, filed an application in the Patent Office for letters patent for a certain alleged invention claimed to have been made by him in needle cylinders for knitting machines.

His claims were rejected by each and all the tribunals of the Patent Office, and upon appeal by Barratt to this court the decision of the Commissioner of Patents adverse to the applicant was affirmed.    In its opinion in the case this court said:

"There is no broad line of demarcation between the exercise of mechanical ingenuity and that of the inventive faculty, and it is not always easy to tell where the one begins and the other ends.    In the meager record of the case before us that difficulty is enhanced by the fact that very much is left for us to conjecture as to the condition of the art to which this alleged invention appertains at the time when the improvement was devised, and the diagrams introduced into the record do not remove the difficulty.    Without entering into details we think that, while the appellant's device commends itself to our favorable consideration, and may upon a judicial investigation wherein proof is more fully supplied and the condition of the art more clearly set forth, be found entitled to the merit of patentable novelty, we should hesitate in this *ex parte* proceeding to reverse the concurrent decisions of all the tribunals of the Patent Office, which we think should not be done except in a very clear case.    At most there is but a suspicion that the appellant's device may rise to the dignity of invention.    Upon full proof in a court of equity that suspicion may possibly become certainty.    We have not now the data before us that would warrant us in so regarding it in this proceeding."    11 App. D. C. 177.

Thereupon the applicant, instead of resorting to a bill in equity, as he was authorized by law to do, filed a new application in the Patent Office for the same subject matter that had been set forth in his previous application, but with more full and ample specifications and drawings, a more thorough showing of the prior condition of the art, and evidence bearing on the patentability of the alleged invention.    And it is this second application that is now before us upon appeal from the Commissioner of Patents, after rejection by all the

tribunals of the Patent Office, mainly upon the ground that by the former decision of this court the matter was *res adjudicata.* It may be added, also, that one of the board of examiners who agreed with his associates in regard to the ground on which they rested their decision, filed a concurrent opinion in which he held that the alleged invention disclosed no patentable novelty. The Commissioner of Patents, who rendered two opinions in the case, held in the first of them that the matter was *res adjudicata;* and then, upon a motion for rehearing, at the request of the applicant, he also passed upon the question of the patentability of the alleged invention, in which he affirmed the theory of the want of patentable novelty. From his decision the case now comes to us on appeal.

While the rules that govern the finality and conclusiveness of adjudications at the common law do not apply, in the strict sense, to administrative or quasi-judicial action in the Executive Departments of Government, yet in administrative action, as well as in judicial proceeding, it is both expedient and necessary that there should be an end of controversy. Sometimes, the element of finality is inherent in the nature of the action taken; as, for example, when letters patent have been granted, they may not be recalled, and the rights of the parties holding them again investigated. Where rights have become vested as the result of legitimate executive action, such action is necessarily final, and it is not competent thereafter for executive action to divest them, either by way of a review of the proceedings or by any new proceedings instituted with that view. Especially is this principle applicable to the proceedings of the Patent Office, which are so nearly akin to judicial proceedings as to be most appropriately designated as quasi-judicial. In fact, it is only by regarding these proceedings as substantially judicial that we can sustain the validity of the legislation which authorizes appeals to this court from the decisions of the Commissioner of Patents.

14 Ct. App.—18

When in a court of law there has been one investigation and thereupon one adjudication, such action becomes final, and can only be reviewed, if at all, by way of appeal. No subsequent suit for the same subject matter and between the same parties can be sustained. What good ground is there for any different course of procedure in the Patent Office? When an application for a patent has been considered and allowed, and the patent has been issued, there can be no question whatever of the finality of such action. The right of the patentee can never thereafter be questioned in the Patent Office, except to the limited extent specially authorized in cases of interference. When, on the other hand, an application for a patent is after due examination rejected, and finally determined against the applicant after exhaustion of the manifold right of appeal allowed to him by the great liberality of the patent laws, why should a second application be allowed or entertained? Is there any reason why the determination of the matter should not be regarded as conclusive? If a second application could be regarded as proper, why not ten or twenty successive applications? Where are the applications to stop, and what would become of the public business, if it were in the power of one person to obstruct the operations of the Patent Office by repeated and persistent applications? These questions answer themselves. Renewed applications are authorized by the patent law under special circumstances in the place of abandoned and forfeited applications; but these are analogous to proceedings at common law to reinstate cases that have been dismissed on technical grounds. But there is no provision of law for a second application, where a previous application has been adjudicated and a patent denied. The absence of such a provision is sufficient evidence that the right to have a second application considered after refusal of a patent upon a previous application does not exist, especially when the fact is recalled that the law in its very great liberality

provides still another method for the applicant to establish. his claim by the way of a bill in equity.

The force of this position is appreciated by counsel for the applicant, who seeks to sustain the course here pursued upon the theory that the new application is substantially different from the previous one, and that it is made in compliance with the spirit, if not with the letter, of the opinion of this court in the former case. That opinion suggested to the applicant to file a bill in equity, as he was authorized by law to do, not a new application, for which there is no warrant in law. The new application does not make a different case. The case is the same precise case. The subject matter of invention is the same. The claim is the same. Only the specifications and drawings are more full; and the state of the art at the time of the alleged invention is more fully and satisfactorily shown. But all this, which might well have been adduced by way of amendment or otherwise in the original proceeding, or which might have been shown under a bill in equity, at the utmost amounts to no more than a clearer and better declaration or additional proof of the alleged invention. It does not make any new case; and it does not justify the filing of any new application.

The applicant seeks to support his contention by reference to the case of *Tilghman* v. *Proctor*, 102 U. S. 707, in which a previous decision by the same court was overruled. But it is not at all an extraordinary thing, that a court, satisfied that there was error in a previous decision, should overrule that decision; and this is all that the case of *Tilghman* v. *Proctor* does. There had been a previous suit of *Mitchell* v. *Tilghman*, 19 Wall. 287, in which Tilghman had sought to recover for alleged infringement of a patent by Mitchell; and the court held that he could not recover, on the ground that the patent was void. In another suit against another party for similar infringement, the court reviewed and overruled its former decision, held that the

patent was valid, and adjudged that the complainant in the suit was entitled to recover. The same thing happened in the *Legal Tender Cases*, 8 Wall. 603, and 12 Wall. 457, and illustrations of such action by the courts can be found in every State of our Union, as well as in England. But this is a very different thing from that now before us. There would be some analogy if we supposed that Tilghman, dissatisfied with the result of his suit against Mitchell, had sued him again for the same precise infringement, covering the same precise period of time, but perhaps with a more elaborate statement of his case, and was met with a plea of *res adjudicata*, and had taken his second case also to the Supreme Court of the United States. We apprehend that, no matter how much the court might have changed its opinion in regard to the question of the validity of the patent, it could not have done otherwise than sustain such a plea. The suit of *Tilghman* v. *Proctor* was not between the same parties and for the same cause of action as the suit of *Tilghman* v. *Mitchell*; and herein consists the radical difference between the case of *Tilghman* v. *Proctor* and the present case.

Illustration of the subject may be found if we suppose that, after the refusal of the primary examiner to consider the case upon its merits, or after the refusal of the Commissioner in the first instance to give the case such consideration, application was made for a writ of *mandamus* to compel entertainment of the case. Could such writ of *mandamus* be maintained? Undoubtedly if the applicant for a patent had a right to prosecute a second application after the determination of the first adversely to him, there would be a corresponding *duty* on the part of the office to hear and determine the case; and beyond question, the performance of such duty could be enforced by *mandamus*. But it would be a complete answer to the writ, if the return of the respondent showed that he had already fully performed what he was required to do, as it certainly would in such a case.

But it is argued that, although the Patent Office, in view

of the authoritative decision of this court in the former case, may not entertain the second application, this court is not precluded from so doing. The answer is, that this court is only an appellate tribunal, and can only deal with such matters as have been raised and adjudicated in the tribunals from which appeals lie to it. It is very true, that in the present instance, the Commissioner was requested upon rehearing to pass upon the question of the patentability of the invention, and that he did to a certain extent pass upon that question. But his decision in that regard amounts to no more than that he finds nothing in the new application that, in his judgment, would warrant him to reverse the action of his predecessor upon the previous application. This is only a reiteration of the statement that the matter had been previously adjudicated, and there was no sufficient reason to disturb that adjudication, and this does not justify a review of the case upon its merits.

In what we have said we do not desire it to be understood that the Patent Office may not, if it thinks proper so to do, entertain and adjudicate a second application for a patent after the first application has been rejected. What we decide is, that it is not incumbent upon the office as a duty to entertain such applications, and that, if it refuses to entertain them, it has a perfect legal right so to do. An applicant is not legally aggrieved by such refusal.

It follows that the decision of the Commissioner of Patents in the present case must be affirmed; and it is accordingly so ordered.

The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents according to law.