GEORGIA PUBLIC SERVICE COMMISSION ET AL. *v.*
UNITED STATES ET AL.

No. 555.   Argued April 30, 1931.—Decided June 1, 1931.

See also, 39 F. (2d) 167.

*Mr. John S. Burchmore,* with whom *Messrs. Luther M. Walter* and *Nuel D. Belnap* were on the brief, for the Georgia Public Service Commission et al., appellants.

*Mr. Edgar Watkins,* with whom *Mr. Mac Asbill* was on the brief, for the State Highway Board et al., appellants.

*Mr. Daniel W. Knowlton,* Chief Counsel, Interstate Commerce Commission, with whom *Mr. E. M. Reidy,* Assistant Chief Counsel, was on the brief, for the United States and the Interstate Commerce Commission, appellees.

*Mr. Robert C. Alston,* with whom *Messrs. Frank W. Gwathmey* and *W. N. McGehee* were on the brief, for the Atlantic Coast Line R. Co. et al., appellees.

*Messrs. Moultrie Hitt, G. Kibby Munson,* and *Ben B. Cain,* by special leave of Court, filed a brief as *amici curiae.*

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Rates on Chert, Clay, Sand, and Gravel Within State of Georgia, 122 I. C. C. 133, was a proceeding under § 13, paragraphs (3) and (4), of the Interstate Commerce Act in which the Commission was petitioned to determine whether certain intrastate carload rates on these products, prescribed by the Georgia Public Service Commission, were unduly prejudicial to persons or localities engaged in interstate commerce. Several related cases, arising out of complaints concerning interstate rates on like products between points in the southern territory, were heard on the same record and dealt with in the same report.[1] Therein, the Interstate Commerce Commission prescribed certain distance scales as a maximum reasonable for interstate single-line and joint-line rates between points in Georgia and points in other States; and found that there was no transportation reason for the maintenance of a different basis of intrastate carload rates for these commodities within the State of Georgia. It did not then enter an order in respect to the intrastate rates, because it

[1] The original report embraced eight cases. It was followed by a further report (140 I. C. C. 85) which, after a further hearing, prescribed scales for certain specific points of origin and destination in Florida. In some respects all these orders are involved in the suit at bar.

believed " that the Georgia commission will coöperate in authorizing such revisions as might be necessary to bring their rates into harmony with the interstate adjustment herein approved." 122 I. C. C. 169–170.[2]

Thereafter the carriers applied to the Georgia Public Service Commission for leave to establish the same distance scales for intrastate traffic. The state Commission refused the application and directed them to establish a scale differing from that applicable to interstate traffic. With that direction the carriers complied; but they petitioned the federal Commission to re-open its proceedings and to determine whether the prescribed intrastate rates result, and will result, in undue prejudice to persons or localities in interstate commerce and in unjust discrimination against such commerce. The petition to re-open the case was granted; the state authorities were again given due notice; and various parties intervened to oppose or support the contested intrastate rates. Upon the supplemental hearing, the Interstate Commerce Commission found that such prejudice and discrimination had resulted, and will result, from the rates prescribed by the Georgia Commission; and ordered the carriers to establish intrastate rates " which shall not be

---

[2] In 1917 the Georgia Commission had undertaken to revise all intrastate class and commodity rates, but because of intervening federal control its order never became effective. After extensive hearings between 1921 and 1925, intrastate commodity rates for Georgia were prescribed. On April 1, 1925, these rates were revised on the commodities here involved. As a result of this order, eight carriers filed the petition which initiated the present proceeding. 122 I. C. C. 140.

In the original hearing, the federal Commission found that the prescribed 1925 intrastate rates had not theretofore been unjustly discriminatory against interstate traffic, but that existing interstate distance scales were virtually broken down by the maintenance of so-called depressed rates which were almost wholly unrelated to distance, and that comprehensive interstate distance scales should be established. 122 I. C. C. 154, 163, 169.

lower, distance considered, than the rates contemporaneously applicable" to the interstate commerce. 160 I. C. C. 309, 326.

To enjoin and set aside that order of the Interstate Commerce Commission, and to restrain the carriers from establishing intrastate rates pursuant thereto, two suits (now consolidated) were brought, under the Urgent Deficiencies Act, October 22, 1913, c. 32, 38 Stat. 208, 219, in the federal court for northern Georgia. The plaintiffs are the Public Service Commission and the State Highway Board of Georgia; the defendants, the United States and the Interstate Commerce Commission. Carriers operating in Georgia and shippers intervened as defendants. The cases were heard by the District Court on an application for an interlocutory injunction, the bills and answers alone being introduced. The injunction was denied. *Georgia Public Service Comm.* v. *United States*, 39 F. (2d) 167. After final hearing on the full record of the proceedings before the Interstate Commerce Commission, the consolidated bill was dismissed. 42 F. (2d) 467. This appeal is from the final decree.

*First.* Appellants contend that the order of the Interstate Commerce Commission is void, because it was entered without the full hearing prescribed by § 13 (4). The argument is this. Paragraph 4 prescribes that "Whenever . . . the Commission, after full hearing, finds" a state rate to be unlawful because it causes undue prejudice or unjust discrimination, "it shall prescribe the rate, fare or charge, or the maximum or minimum, or maximum and minimum, thereafter to be charged." Act of February 28, 1920, c. 91, § 416, 41 Stat. 456, 484, amending Act of February 4, 1887, c. 104, § 13, 24 Stat. 379, 383. The claim is that there was no "full hearing" before entry of the challenged order, because the Commission limited the supplemental hearing to the question of prejudice and discrimination, and refused to consider anew

the question of the reasonableness of the interstate scales. It is true that when state rates are assailed on the ground that they result in undue prejudice to interstate shippers or discriminate against interstate commerce, the Commission must determine whether the existing interstate rates are reasonable, as it may not require intrastate rates to be raised above a reasonable level. State Corporation Comm. *v.* Aberdeen & Rockfish R. Co., 136 I. C. C. 173, 180. But the reasonableness of the interstate rates had already been found when they were established in the earlier stage of the proceedings; and at those hearings the Georgia Commission and the Highway Board were represented. Nearly eighteen months had elapsed since the original order,[3] but no evidence was offered at the supplemental hearing to show that conditions had so changed since the interstate rates were prescribed as to require reconsideration of the issue. The appellants' objection to the procedure is unfounded.[4]

*Second.* Appellants contend that while the order prescribes a minimum and a maximum basis for intrastate rates, the minimum basis is so vague and uncertain as to

---

[3] This order, establishing the so-called 17517 scales, was entered on January 21, 1927, and rates under it became effective October 1, 1927. The supplementary order of the Georgia Public Service Commission was entered March 13, 1928. The proceedings before the federal Commission were reopened on June 4, 1928.

[4] The Commission stated: " For the purpose of determining whether or not this [the alleged discrimination] is the fact, the proceedings were reopened and the further hearing had. The scope of the further hearing was properly limited to the question indicated. If the contention made . . . in this regard were sound, then our efforts to secure coöperative action in situations such as here presented, instead of bringing about that result, could be made the instrument of burdening this commission with endless investigations covering the same subject matter and would result in litigation being prolonged indefinitely." 160 I. C. C. 313. Compare *Railroad Commission* v. *Chicago, B. & Q. R. Co.*, 257 U. S. 563, 591.

render the entire order void. The order requires the carriers to establish intrastate rates "which shall not be lower, distance considered, than those contemporaneously applicable to interstate transportation of the same commodities, in straight or mixed carloads, between points in the State of Georgia, and from points in other States in southern territory, except Florida, to points in the State of Georgia, not exceeding the rates set forth in the Appendix to this report and heretofore found and prescribed as reasonable in No. 17517 for the interstate transportation of said commodities in straight or mixed carloads." The claim is that this language leaves it doubtful whether the word "contemporaneously" refers only to rates in force at the time of the effective date of the original order, or also to such rates as may be made by the carriers from time to time thereafter, thereby raising or lowering future intrastate rates without the full hearing provided for by § 13 (4). We think it clear from the terms of the order that the interstate rates referred to are those now applicable and maintained. Compare *Shreveport Case,* 234 U. S. 342, 346–347; *Alabama* v. *United States,* 279 U. S. 229. When the order is read, as must be done, in the light of the report, *American Express Co.* v. *Caldwell,* 244 U. S. 617, 627, this and other alleged uncertainties are removed.[5]

---

[5] Two other ambiguities are charged. It is urged that the phrase, "distance considered," is not complete since it does not indicate whether the distance of joint-line or single-line haul is meant. Under the original order establishing the 17517 scales, the rate is determined by the distance scale comprised in the shortest route over which carload traffic can be moved without transfer of lading, irrespective of whether such route necessitates a single or joint-line haul. This formula is readily applicable to intrastate shipments. It is also argued that since several carriers are charging less than the 17517 scales, the order is uncertain because it does not indicate whether the minimum intrastate scale is to be determined by the prescribed interstate scale or by the actual departures from it.

The order here challenged is state-wide in operation; and it governs a vast multitude of rates. Because of divergent conditions, a doubt may well arise in applying the rule prescribed to some particular situation. But possible uncertainty of application in isolated instances is not a sufficient ground for setting aside in its entirety, by judicial process, a carefully drawn order, otherwise valid and practicable of operation over a wide territory. The appropriate remedy under such circumstances is an application to the Commission requesting it to suspend the operation of the order in so far as it may affect the isolated cases; and, if necessary, to enter an independent order dealing specifically with them. *American Express Co.* v. *Caldwell,* 244 U. S. 617, 627. Such specific order, if appropriate for review under the Urgent Deficiencies Act, could be dealt with by the courts without interfering with the operation of the order as a whole or with the flexible administrative processes by which it may from time to time be modified. Compare *Railroad Commission* v. *Chicago, B. & Q. R. Co.,* 257 U. S. 563, 591; Interstate Commerce Commission Rules of Practice, Rule XV (c); and the practice in State Corporation Comm. *v.* Aberdeen & Rockfish R. Co., 136 I. C. C. 173; 161 I. C. C. 273, 286; 165 I. C. C. 31; 169 I. C. C. 728; Southern Class-Rate Investigation, 100 I. C. C. 513; 109 I. C. C. 300; 113 I. C. C. 200; 128 I. C. C. 567; Eastern Class-Rate Investigation, 164 I. C. C. 314; 171 I. C. C. 481. It is true that the Georgia Public Service Commission petitioned the federal Commission for an interpretation of the order now challenged. But its petition, which occupies fourteen pages of the printed record, was in effect a petition for rehearing of the state-wide order.[6] Compare *New England Divisions Case,* 261 U. S. 184, 204.

---

[6] The state Commission requested a rehearing or a further order that the carriers file, within a definite time, complete intrastate schedules so that specific objection might be made. Since there were

*Third.* The appellants contend that the order is void because there are no adequate findings of undue disparity between the rates charged for intrastate transportation in Georgia and the rates actually in force for interstate transportation; and also because there was no finding that the intrastate rates imposed an undue burden upon the carriers' interstate revenues or that the alteration of the intrastate rates would produce additional revenue. The findings in the report are definite and comprehensive. There are, moreover, illustrative specific findings which confirm the general ones and show that in a real sense, and to a substantial degree, undue prejudice and discrimination to interstate shippers and localities have resulted and will result.[7] The requirement of definiteness, to which attention was called in *Beaumont, S. L. & W. Ry. Co.* v. *United States,* 282 U. S. 74, 86 and in *Florida* v. *United States,* 282 U. S. 194, 208, is also met.

---

hundreds of shipping and receiving points, every local municipality and county being a potential customer for these roadbuilding products, the enforcement of this request would have involved a complete reopening of the proceedings. A few specific difficulties in application were outlined in the state Commission's petition, but these were offered, not for definite rulings, but merely by way of illustrating defects in the order.

[7] The findings as to prejudice to interstate shippers embraced almost all of the commodities considered and included large-scale producers which were able to absorb rate differentials in some parts of the State but could not compete in all parts. Moreover, rate differences were found to be highly detrimental because the commodities here involved are among the lowest valued for shipment, and the cost of transportation is a relatively large, and often conclusive, factor in the cost to consumers. The Commission compiled from the exhibits a series of tables which indicated that the rates prescribed by the state Commission were, within the usual intrastate traffic distances, either equal to or less than the 17517 scales for single-line hauls, and uniformly less than the interstate scales for joint-line hauls. 160 I. C. C. 314, 316. Similarity of operating and transportation conditions was clearly established and found.

*Fourth.* The appellants contend that the findings are unsupported by the evidence. When an investigation involves shipments from and to many places under varying conditions, typical instances justify general findings. *Railroad Commission* v. *Chicago, B. & Q. R. Co.,* 257 U. S. 563, 579. Compare *Beaumont, S. L. & W. Ry. Co.* v. *United States,* 282 U. S. 74, 83. While the order relates only to a few commodities, the scales of rates are statewide in operation; and they apply to shipments between hundreds of points of origin and destination. To require specific evidence and separate adjudication in respect to each would be tantamount to denying the possibility of granting relief. Compare *New England Divisions Case,* 261 U. S. 184; *Railroad Commission* v. *Chicago, B. & Q. R. Co., loc. cit. supra.* The evidence was comprehensive in scope. It occupies 556 pages of the printed record; and there were besides 337 exhibits.[8] The proof of the discrimination against interstate commerce was specific and typical, and was clearly sufficient to establish the undue prejudice to interstate shippers. Compare *Nashville, C. & St. L. Ry. Co.* v. *Tennessee,* 262 U. S. 318; *United States* v. *Illinois Cent. R. Co.,* 263 U. S. 515.

*Fifth.* Appellants contend that the order was an arbitrary exercise of the Commission's limited power over intrastate rates and that it constitutes an invasion of the sovereign rights of the State. It is urged, among other things, that while the findings require intrastate rates no lower, distance considered, than those contemporaneously applicable on interstate traffic, the Commission had theretofore consistently held that distance is not the sole controlling factor in rates;[9] and also that

---

[8] By stipulation these, and the various tariff schedules, were not reprinted but were brought here in their original form.

[9] It is pointed out that where traffic density varies or transportation conditions are different, the Commission has recognized that distance

the Commission's allowance of higher rates for joint-line hauls is inconsistent with uniform scales established by it in other decisions.[10]  The argument is, in effect, an appeal to this Court to review the exercise of administrative discretion.  It is not our province to enquire into the soundness of the Commission's reasoning, the wisdom of its decisions, or the consistency of its conclusion with those reached in similar cases.  *Western Paper Makers' Chemical Co.* v. *United States,* 271 U. S. 268, 271.  The facts to which our attention is called furnish no support for the charge of arbitrariness or of invasion of the sovereign rights of the State.  Compare *Shreveport Case,* 234 U. S. 342, 354; *American Express Co.* v. *Caldwell,* 244 U. S. 617, 625.

*Affirmed.*

---

alone should not be a controlling factor.  But the cost elements involved in the movement of the low grade commodities here concerned were adequately considered in the first hearing in which the reasonableness of the 17517 distance scales was determined.  Those rates took " fully into consideration the very low values of these commodities and all characteristics, transportation and otherwise, which entitle them to relatively low rates.  It will be a scale, in our opinion, from which the carriers ought not to depart." 122 I. C. C. 148.  In part as a result of the order then entered and in part by voluntary extensions by the carriers, these scales were put into force throughout most of the southern territory, and were also adopted intrastate in four States.  The further finding as to the similarity in transportation conditions in interstate and intrastate shipments was amply sustained by the evidence.

[10] It is argued that the federal Commission has never permitted dual scales in similar cases; that even where allowed, the two scales have merged after relatively short distances; and that the evidence and findings in either report are insufficient to support a higher joint-line scale for the class of commodities here in question.