STATE OF LOUISIANA et al. v. UNITED STATES et al.

No. 96.

District Court, E. D. Louisiana.

Dec. 14, 1932.

Wylie M. Barrow, Sp. Asst. to Atty. Gen., for plaintiffs.

Nelson Thomas, Sol., Interstate Commerce Commission, of Washington, D. C., and Elmer B. Collins, Asst. to U. S. Atty. Gen., for defendants.

Harry McCall, Esmond Phelps, and Selim B. Lemle, all of New Orleans, La., for interveners.

Before FOSTER, Circuit Judge, and BORAH and COX, District Judges.

BORAH, District Judge.

This is a bill in equity against the United States and the Interstate Commerce Commission brought by the state of Louisiana, Louisiana Public Service Commission, and Louisiana Highway Commission to annul and enjoin the enforcement of an order of the Interstate Commerce Commission in the proceeding numbered and entitled "No. 25135, Increases in Intrastate Freight Rates, Part 5 Louisiana," 186 I. C. C. 615, requiring the railroads operating in intrastate commerce in the state of Louisiana to charge in such commerce "rates which shall not be lower than the rates now in force and applicable to intrastate commerce within the state of Louisiana, plus the surcharges authorized by the findings in Fifteen Per Cent Case, 1931 [178 I. C. C. 539 and 179 I. C. C. 215]." The suit is brought under the Urgent Deficiencies Act, October 22, 1913, c. 32, 38 Stat. 208, 219, and was heard on an application for an interlocutory injunction. The railroad companies affected by the order were on their petition permitted to intervene, and are here as defendants.

Prior to the institution by the Commission of its investigation as to intrastate rates and charges, it had made and rendered its original report and decision in Fifteen Per Cent Case, 1931, 178 I. C. C. 539, in which the conclusion was reached "that a 15 per cent increase in all freight rates and charges would increase revenues, if at all, only temporarily and that its ultimate effect, not very long postponed, would be to harm rather than help the railroads," and also "that such an increase would raise the rates upon many kinds of traffic above a just and reasonable level." It was, however, pointed out in said report that it did not follow that no increase in rates should be made at that time, and, after adverting to some important increases authorized and pending, the Commission went on to say that it was their further belief "that the traffic departments of the railroads should address themselves to the task of making such changes in the rates on particular kinds of traffic as will, in their judgment after careful analysis of all attendant circumstances, produce additional revenue and which can be supported as reasonable under existing conditions," and the assurance was given that, if tariffs were filed in accordance with this suggestion, such proposals would receive sympathetic and expedited consideration. A substitute plan was also offered for the consideration of the railroad executives which proposed specific rate increases upon certain designated commodities conditioned in part that the income therefrom should be kept separate from other operating income of the carriers, placed in a pool, and used to pay fixed charges and for other purposes described in the report. This substitute measure of relief did not meet with entire favor on the part of the carriers, because in their judgment the pooling plan provided for could not as a practical matter be applied, and they accordingly petitioned the Commission to make such distribution on a loan basis. Further argument was heard, and on reconsideration the Commission handed down its supplemental report dated December 5, 1931, 179 I. C. C. 215, modifying its original report to the extent of relieving

546

the carriers from complying with the pooling plan and authorizing the establishment of the proposed increases without any condition or restrictive requirement whatever. More specifically, the effect of the Commission's orders were to authorize throughout the country on certain commodities therein specified increases in interstate rates varying from 6 to 12 cents per ton to 2 cents per 100 pounds subject to a maximum increase of 10 per cent. in the charge of any shipment, said increases to expire March 31, 1933, unless extended. The freight articles selected for the application of the surcharges were those on which it was thought some increases might be permitted without diversion of traffic to other means of transportation and without bringing about an undue disturbance in business conditions or transgressing the bounds of maximum reasonable rates. There was, however, no finding that each and every rate so increased would be a maximum reasonable rate, and there was no requirement that the rates so increased should be maintained as minimum rates, and the carriers were left free to reduce them if experience should show that more traffic and revenue could be obtained by a reduction.

Following the issuance of its reports in Fifteen Per Cent Case, 1931, the carriers throughout the United States, including those operating in the state of Louisiana, published and applied the surcharges allowed on interstate traffic, and those operating in the state of Louisiana petitioned the Louisiana Public Service Commission for authority to apply corresponding increases on Louisiana intrastate traffic. In due course the Louisiana commission held a public hearing and granted the petition in part, but, following the precedent established by the Interstate Commerce Commission, and in the exercise of its authority to regulate and control intrastate rates, exempted from the surcharges thirty-seven commodities, principally the products of agriculture and all less than carload traffic. Thereupon the carriers operating in Louisiana, and carriers operating in other states whose rate-regulating bodies had denied similar petitions, applied to the Interstate Commerce Commission for thirteenth section relief. After due hearing the Commission on September 29, 1932, found, 186 I. C. C. 615, that the failure of the Louisiana commission to permit application of surcharges corresponding to those maintained on interstate traffic resulted in unjust discrimination against interstate commerce, but no appropriate order was issued at that time. On November 7, 1932, the Commission entered a definite thirteenth section order requiring the carriers to establish and maintain on the thirty-seven commodities exempted from the surcharges by the Louisiana commission "and all less-than-carload traffic in intrastate commerce within the State of Louisiana, rates which shall be no lower than the rates now in force and applicable to the intrastate transportation of said traffic within the State of Louisiana, plus the surcharges authorized by the findings in Fifteen Per Cent Case, 1931, 178 I. C. C. 539 and 179 I. C. C. 215, on corresponding interstate traffic so long as such surcharges are maintained on such traffic in accordance with said findings." It is this order that constitutes the subject-matter of this suit.

The principal ground of attack upon which complainants rely is that the Commission did not comply with section 13 (4) of the Amended Commerce Act, 49 USCA § 13(4), in that it made no finding in Fifteen Per Cent Case, 1931, that the resulting rates would be just and reasonable, and hence there is no basis for the order requiring the intrastate rates to be raised. Florida v. United States, 282 U. S. 194, 51 S. Ct. 119, 75 L. Ed. 291; Georgia Public Service Commission v. United States, 283 U. S. 765, 51 S. Ct. 619, 75 L. Ed. 1397. On the other hand, the defendants contend that this is a revenue case and that the rule is to be distinguished from a case where particular rates are involved, and that the action of the Commission was in accordance with section 15a (49 USCA § 15a) dovetailed in with section 13 (4), 49 USCA § 13 (4).

In cases of this character, the Commission may apparently act from one or both reasons; namely, (1) that there is an unjust discrimination or undue prejudice created against interstate commerce; or (2) that, it being a revenue case, the intrastate rates are not contributing their proper proportion to the revenue of carriers, thus casting a burden on interstate commerce. In our judgment the Commission's order under either situation lacks the findings that are essential to support a destruction of the state's regulatory power; it made no order requiring the carriers to apply their proposed interstate surcharges, but only granted them permission to do so or not as they elected, and the rates resulting from the authorized surcharges were never found to be just and reasonable; nor can the Commission's order be justified as a revenue measure because it specifically found that, "where we make such a finding (of unjust discrimination) and re-

quire an increase in the intrastate rates, it is to be understood that we conclude that no positive finding in regard to the revenue outcome of the increase can be justified." We do not believe that the Interstate Commerce Commission can, by allowing a general increase in interstate rates, compel the state commission to allow the same increases on intrastate traffic, in the absence of the essential finding that the resulting rates would be reasonable or that for the future they will increase the carriers' revenue.

An interlocutory injunction may accordingly be granted as prayed for. In the event of an appeal, a supersedeas will be granted to the carriers on the furnishing of bond.