COMMONWEALTH OF KENTUCKY et al. v.
UNITED STATES et al.

No. 756.

District Court, W. D. Kentucky.

March 10, 1933.

Bailey P. Wootton, Atty. Gen., for the State of Kentucky.

J. V. Norman, Special Counsel, of Louisville, Ky., for the Railroad Commission of Kentucky.

Elmer B. Collins, Sp. Asst. to Atty. Gen., John Lord O'Brian, Asst. to Atty. Gen., and Thomas J. Sparks, U. S. Atty., of Louisville, Ky., for the United States.

J. Stanley Payne, Asst. Chief Counsel, of Washington, D. C. (Daniel W. Knowlton, Chief Counsel, of Washington, D. C., of counsel), for Interstate Commerce Commission.

Edw. P. Humphrey and Marvin H. Taylor, both of Louisville, Ky., for Cincinnati, N. O. & T. P. Ry. Co.

Edw. P. Humphrey and Marvin H. Taylor, both of Louisville, Ky., for Southern Ry. Co.

Thomas J. Wood and Trabue, Doolan, Helm & Helm, all of Louisville, Ky., for Illinois Cent. R. Co.

H. G. Fitzpatrick, of Richmond, Va., for Chesapeake & O. Ry. Co.

W. A. Northcutt, of Louisville, Ky., for Louisville & N. R. Co.

Before MOORMAN, Circuit Judge, and COCHRAN and DAWSON, District Judges.

## PER CURIAM.

This is a suit under the Urgent Deficiencies Act, 28 USCA §§ 41 (27, 28) 42–47, to enjoin the enforcement of an order of the Interstate Commerce Commission, issued November 7, 1932, requiring interstate railroads operating in Kentucky to establish and maintain for the transportation of all intrastate traffic within the state rates which shall not be lower than the rates in force and applicable to corresponding interstate traffic within the state, plus the surcharges authorized by the findings of the commission in the Fifteen Per Cent. Case, 1931, 178 I. C. C. 539, and Id., 179 I. C. C. 215. The case is submitted on an application for an interlocutory injunction without proofs. The grounds relied on are: (1) That the order of the commission is not supported by sufficient findings; and (2) that it is arbitrary and unreasonable.

Two cases involving similar orders have been brought and decided in other jurisdictions. While there may be some differences in the phraseology of the orders involved in those cases, in the main the questions there presented and considered were the same as those presented in the case before us. Different conclusions were arrived at in those cases.. In one, State of Louisiana, etc., v. United States, 2 F. Supp. 545, District Court of Louisiana, the order of the commission was enjoined; in the other, State of Montana, etc., v. United States, 2 F. Supp. 448, District Court of Montana, the application for an injunction was denied.

The Fifteen Per Cent. Case originated on applications, under section 6 of the Interstate Commerce Act (49 USCA § 6), for authority to depart from the ordinary rules governing tariff publications, coupled with requests that the commission, after investigation, should hold that if contemplated tariffs were filed they would not be suspended. The case actually developed into one under the provisions of section 15a (2) of the act, as amended by Act Feb. 28, 1920, § 422 (49 USCA § 15a (2), and the commission, after full investigation, declined to permit the 15 per cent. increase, but did authorize the imposition, upon conditions, of increased rates on the transportation of certain classes of freight. Thereafter, upon petition of the carriers, it withdrew the conditions which it had imposed. Pending the consideration of that case, the carriers in Kentucky filed petitions with the Railroad Commission of Kentucky seeking similar increases in the intrastate rates in Kentucky. After the Interstate Commerce Commission had authorized the increase of interstate rates on certain classes of traffic, the carriers in Kentucky filed a supplemental petition before the Railroad Commission of Kentucky for the same increases on the same classes of intrastate traffic in Kentucky. The Kentucky Commission denied the application, and following its denial the carriers petitioned the Interstate Commerce Commission to require the Kentucky rates to be increased in order to remove any undue, unreasonable, or unjust discrimination against interstate or foreign commerce within the state. It was upon this petition that the order here in question was issued.

It is agreed that upon proper findings the commission may issue an order requiring the intrastate rates of interstate carriers to be raised to a general level in order to remove any unjust discrimination against interstate commerce. Railroad Commission of State of Wisconsin v. Chicago, B. & Q. R. Co., 257 U. S. 563, 42 S. Ct. 232, 66 L. Ed. 371, 22 A. L. R. 1086; New York v. United States, 257 U. S. 591, 42 S. Ct. 239, 66 L. Ed. 385. The commission relies upon these cases as authority to support its order. The plaintiffs rely upon Florida v. United States, 282 U. S. 194, 51 S. Ct. 119, 125, 75 L. Ed. 291. In the Florida Case the commission made an order increasing rates on a certain commodity throughout the entire state. The court held that there was no finding that the increased rates "would produce, or was likely to produce, additional income necessary to prevent an undue burden upon the carrier's interstate revenues and to maintain an adequate transportation service." For this reason and because of the absence of other essential findings the court held the order invalid. The opinion cites and approves the earlier decision of the court in the Wisconsin Case. We think the facts and findings in the case at bar correspond more nearly to those in the Wisconsin Case than to those in the Florida Case.

The plaintiffs contend that to support the order here in question it was necessary for the commission to find: (1) That the interstate rates are just and reasonable; (2) that the intrastate rates are on a lower level than the interstate rates and are less than just and reasonable; (3) the amount of revenue produced by the existing intrastate rates; (4) that such rates do not produce their fair proportionate share of the revenue of the carriers as a whole; and (5) that the increases in the state rates would produce the additional revenue necessary for the state traffic to contribute its fair proportionate share of the total revenue of the carriers. They further contend that none of these essential findings was made. The commission contends that all the findings necessary to sustain the order are embodied in the findings and reports in the Fifteen Per Cent. Case and in the Kentucky Case, Increase in Intrastate Freight Rates, Part 4—Kentucky, 186 I. C. C. 615.

In a supplemental report in the Fifteen Per Cent. Case filed December 5, 1931, the commission, in reviewing its original report and in speaking of the increases that it had therein authorized, said: "The freight articles selected by us in this connection were those for the transportation of which we believed the rates could be somewhat increased without causing the traffic to be transferred to other agencies of transportation and without bringing about an undue disturbance in business conditions or transgressing the bounds of maximum reasonable rates." This language, it seems to us, is a sufficient finding that the increases which the commission authorized in the interstate rates were just and reasonable.

As to unjust discrimination against interstate commerce, we note that the commission found that, "in view of the surcharges which have become effective interstate in the freight rates on the classes and commodities here in question, under our findings in Fifteen Per Cent. Case, 1931, supra, respondents' intrastate rates in Kentucky on the same classes and commodities, to which no corresponding surcharges have been added, have resulted and will result in unjust discrimination against interstate commerce." Increase in Intrastate Freight Rates, 186 I. C. C. pages 615, 639, 640. This, in our opinion, is a sufficient finding that the intrastate rates in Kentucky, as existing at that time, did not produce their fair proportionate share of the revenue of the carriers as a whole. We do not conceive it to have been the duty of the commission to find that each of the several intrastate rates affected by the order was less than reasonable, nor to find that the intrastate rates in Kentucky were on a lower level than the interstate rates. The case was a general revenue case, in which the commission was dealing with a general level of rates theretofore fixed and presumably reasonable under the circumstances then existing, with the view, among others, of bringing the intrastate rates into just relationship to the increased interstate rates in order to remove unjust discrimination and to impose upon each class of rates its just share of the burden of maintaining the transportation service of the country. All the commission was required to do was to make findings in relation to the general level. New England Divisions Case, 261 U. S. 184, 197, 43 S. Ct. 270; 67 L. Ed. 605. As to this it found that the increases as applied to "both state and interstate" traffic would result in increased revenues; and, further that the increases would not transgress "the bounds of maximum reasonable rates." In making the latter assertion, the commission plainly had in mind, it seems to us, the two classes of traffic to which it referred in dealing with the subject of increased revenues. These statements amounted to a finding that the increases as applied to state

rates would not raise them above a just and reasonable level. This, in our opinion, was a sufficient finding as to the reasonableness of such increased rates. Georgia Public Service Comm. v. United States, 283 U. S. 767, 770, 51 S. Ct. 619, 75 L. Ed. 1397.

Coming to the other insistence of the plaintiffs, that is, that there is no finding that the increased state rates would produce the necessary additional revenue from state traffic to contribute its fair share to the total revenue of the carrier, we find that in the report in the Fifteen Per Cent. Case it is stated: "The plan outlined in the appendix we estimate will produce between one hundred million and one hundred twenty-five million dollars increased revenue on the basis of present traffic if applied both State and interstate." In considering this statement it is to be remembered, as heretofore pointed out, that the commission was undertaking to perform a duty imposed upon it by section 13 (4) of the Interstate Commerce Act (49 US CA § 13 (4), that is, so to establish and adjust rates, interstate and state, as to avoid impairment of the national transportation service. It is apparent, too, that it was contemplated in the plan of the commission, as thus and otherwise shown, that intrastate traffic, as well as interstate, should contribute its share to this object. Manifestly, however, the increases in the Kentucky state rates would be ineffectual for that purpose unless it were found that such increases would result in increased revenues for the carriers and a sharing of the burden with interstate commerce. The insistence that no such finding was made is based largely upon the statement of the commission "that we conclude that no positive finding in regard to the revenue outcome of the increase can be justified." It is said by the plaintiffs that in view of this statement the commission was without power to enter the order complained of, for it did not and could not find that the increased rates would produce increased revenues or impose upon intrastate traffic its fair share of the burden of maintaining the railway service. We cannot view the statement as having that effect.

The commission is not required, in a case of this kind, to make formal findings of fact. Manufacturers' R. Co. v. United States, 246 U. S. 457, 490, 38 S. Ct. 383, 62 L. Ed. 831. In its report as to revenues to be produced by an application of the surcharges to the Kentucky state rates, it is said: "The Louisville & Nashville, on the basis of traffic handled during March and September, 1931, estimates that it would collect $182,739 additional annual revenue if the surcharges were applied to Kentucky intrastate traffic. It allots to itself, in this estimate, 50 per cent of all interline charges collected. The Chesapeake & Ohio, on the basis of the traffic handled during March, 1932, estimates that it would receive $42,812 additional annual revenue. The Illinois Central Railroad Company estimates that it would receive $84,022 more per year, and the Southern Railway Company and Cincinnati, New Orleans & Texas Pacific Railway Company estimate that they would receive about $19,600 a year additional."

While this is not a direct finding as to exact revenue results, as indeed there could be no such finding, it is, it seems to us, sufficient to support the order. In the Wisconsin Case the commission's finding was: "Evidence offered by the carriers indicates that if the present intrastate fares are continued for one year and if there is the same intrastate travel during that year as in the calendar year 1919, the direct loss to the carriers due to their failure to secure the 20 per cent increase in intrastate fares will approximate $2,400,000, and if the 2-cent intrastate fare should become effective the loss would be approximately $6,000,000." Wisconsin Passenger Fares, 59 I. C. C. 391, 393. It will be noted that in that case the commission said, "Evidence offered by the carriers indicates," while in this case it named the carriers and said as to each it "estimates." We can see no substantial difference in this feature of the two reports. The plaintiffs insist, however, that there is a statement in the report, Ex parte 74, Increased Rates, 1920, 58 I. C. C. 220, 246, on which the Wisconsin Case was based, which, when read in connection with the statement just quoted, distinguishes that case from the present case. That statement is that the charges for freight service, including switching and special service, "together with the other increases hereinbefore approved," that is, the passenger fares, "would enable the carriers in the respective groups, under honest, efficient, and economical management and reasonable expenditures for maintenance of way, structures, and equipment, to earn an aggregate annual railway operating income equal, as nearly as may be, to a return of 5½ per cent upon the aggregate value." We think that the equivalent to this statement is to be found in the Fifteen Per Cent. Case, where the commission said that "the plan outlined in the appendix we estimate will produce between one hundred million and one hundred twenty-five million dollars increased revenue on the basis

of present traffic if applied both State and interstate." Certainly there is not such a difference between the two as to warrant us in saying that the finding in this case is not substantially the same as that in the Wisconsin Case.

■■ It is said that the order of the commission is arbitrary because it freezes the Kentucky rates and deprives the state commission of all authority to change them so long as the order remains in effect, whereas under the order applicable to interstate rates the carriers are left free to exercise their managerial judgment as to whether the surcharges shall be applied. But by the terms of the order the intrastate traffic that is affected is only such traffic as corresponds with interstate traffic upon which the surcharges are maintained under authority from the commission. Thus it is that the order merely removes the disparity between interstate and state rates on the same class of traffic. It is true that it "freezes" the Kentucky rates to the extent that it deprives the state commission of the power to reduce them below the general level of the interstate rates for the same traffic. This, however, was authorized by the statute, section 13 (4), which provides that the commission shall have the power to prescribe "the rate, fare, or charge, or the maximum or minimum, or maximum and minimum, thereafter to be charged, and the classification, regulation, or practice thereafter to be observed, in such manner as, in its judgment, will remove such advantage, preference, prejudice, or discrimination." What the commission did was to prescribe a minimum level in order to remove disparity between the two classes of rates, leaving the state authorities free to deal with intrastate rates above that level. When supported by facts which it finds, the commission clearly has the right, it seems to us, to enter such an order. Nor do we think that the order can be successfully assailed upon the ground that it requires shippers in Kentucky to pay higher intrastate transportation charges than shippers in certain other states where intrastate rates are lower. It may be that intrastate rates in Kentucky are generally higher than like rates in some other states. That is a matter, however, which we are not free to inquire into. The nature of the proceeding here limits our consideration to the sufficiency of the findings, and we think they are sufficient to support the order.

It results that the injunction must be denied, and an order to that effect will be entered.