**PANHANDLE EASTERN PIPE LINE COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION.**

No. 11578.

United States Court of Appeals Third Circuit.

Argued March 20, 1956.

Decided Aug. 16, 1956.

William E. Miller, Harry S. Littman, Washington, D. C. (Steptoe & Johnson, Washington, D. C., on the brief), for petitioner.

Willard W. Gatchell, Louis Flax, Washington, D. C. (Lambert McAllister, Asst. Gen. Counsel, Francis J. Walsh, Atty., Federal Power Commission, Washington, D. C., on the brief), for respondent Federal Power Commission.

Stanley M. Morley, Washington, D. C. (Charles V. Shannon, Wheat, May & Shannon, Washington, D. C., John Dern, Arthur R. Seder, Jr., Sidley, Austin, Burgess & Smith, Chicago, Ill., on the brief), for Michigan Consolidated Gas Co., intervenor.

David R. Kaplan, Detroit, Mich. (Gerald K. O'Brien, Pros. Atty. Wayne County, Mich., Leonard Simons, Sp. Asst. Pros. Atty., County Utilities Counsel, Detroit, Mich., on the brief), for Wayne County, Mich.

James H. Lee, Detroit, Mich. (Paul T. Dwyer, Corp. Counsel, Detroit, Mich., on the brief), for City of Detroit, Mich., intervenor.

Before MARIS, McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Panhandle Eastern Pipe Line Company, hereinafter called Panhandle, is

asking that this court review and set aside an order of the Federal Power Commission "granting in part" a motion to dismiss a rate proceeding which Panhandle had initiated pursuant to Section 4 of the Natural Gas Act, 15 U.S.C.A. § 717c, by filing a revised gas tariff to achieve certain price increases and other changes. The commission suspended the proposed tariff revisions pending hearing. When the matter came on for hearing Panhandle was permitted to present its case in chief. Government counsel and counsel for certain intervenors then moved to disallow the proposed changes and to dismiss the proceeding. This motion was granted in part by an order directing the elimination of certain elements and factors from the proposed revised tariff. It is this order that we are reviewing. To complete the procedural picture it may be noted that the required eliminations have been made under protest and what remained of the proposed rate increases has been put into effect on an interim basis as provided by law until the pending litigation can be finally adjudicated by the commission.

The order under review eliminated as unjustified those parts of the proposed revisions which were accomplished in four ways: (1) by increasing Panhandle's previously approved overall rate of return from 5¾ to 6¾ percent; (2) by adding to Panhandle's working capital requirement, as the commission had formerly computed it, an item representing minimum bank balances; (3) by certain changes in the allocation of costs; (4) by certain other changes characterized by the commission as "major revisions of Panhandle's rate structure and form of tariff", as approved by the commission in earlier rate proceedings. The commission stood on its approach to and analysis of these factors in other recent Panhandle rate proceedings, principally Opinion No. 269 issued on April 15, 1954. It also found that no new or supervening occurrences had been shown by Panhandle to warrant reconsideration of the commission's recent conclusions with reference to these matters. Pan-

handle says that this disposition of its contentions was both an unwarranted use of the doctrine of res judicata and an arbitrary refusal to give effect to its actual showings of recently changed conditions and circumstances.

A preliminary point concerns the procedure followed by the commission in this case. Panhandle says that it was improper and unfair for the commission to take dispositive action disallowing its proposed rate increases and tariff changes in part before final decision of this rate case in its entirety. It is pointed out that in cases of this type parties are permitted to present evidence of changed circumstances and recent occurrences up to the time hearings finally close. Therefore, Panhandle reasons, judgment on such a matter as fair rate of return should be postponed until all parties have presented all of their evidence on that and all other issues, thereby permitting any supplementary showing on the issue of fair rate of return which may be made possible by new developments and changing circumstances during the pendency of the total rate proceeding.

But Panhandle must have based its claim for a higher rate of return upon justification existing at the time of filing. It is difficult to see how else a change could have been proposed in good faith. True, in recognition of the time involved in these often long drawn out rate proceedings, the commission quite properly permits the basic showing of the justification which existed at the time of filing to be supplemented by evidence of occurrences since filing. But this is far from saying that a party who tries and fails to make a prima facie showing to support severable elements of his claim is entitled to a postponement of adjudication thereon in anticipation of possible new justification which some future event may supply before the overall case can be completed.

Here the record shows that Panhandle was given full opportunity to offer all of its evidence in support of the items which the commission disallowed in the

order now on appeal. Thereafter, the commission was under no obligation to postpone its ruling on those matters. Indeed, to have done so would have permitted Panhandle to put into effect, albeit under bond and subject to possible future refund, increased rates, parts of which it had attempted and, in the commission's view, failed to justify.

This brings us to Panhandle's contention that the commission has erroneously treated certain issues, among them the propriety of a 5¾ percent rate of return, which were decided in its Opinion No. 269 as res judicata. In this connection it is argued that here, as in Mississippi River Fuel Corporation v. Federal Power Commission, 3 Cir., 1953, 202 F.2d 899, although for a different reason, the commission has improperly rejected a filing without hearing and adjudication on its merits. But this entire argument either misconceives the nature of res judicata or inaccurately pictures the course of this case.

When a tribunal disposes of an issue as res judicata, it invokes a rule of law to make a prior decision binding on a litigant and to deny him another hearing on the previously decided matter. But when a tribunal permits a party to make whatever showing and justification he will on the merits of an issue and, that showing considered, concludes that it will adhere to its own earlier decision on substantially the same point, res judicata has not been invoked. It is clear that the latter course was followed here. Panhandle was not denied a hearing on the merits of any issues which had once been decided against it. Rather, it was permitted to present its entire case in chief. Thereafter, on motion to dismiss, the commission concluded that certain claims and justifications presented by Panhandle here were addressed to but not persuasive upon issues it had recently considered and decided in other rate cases. Accordingly, the commission elected to be guided by those rulings. At most the commission was undertaking to follow its own recent and considered exercise of judgment and to make its successive rulings, exhibit continuity and consistency. This is quite different from imposing a rule of res judicata upon a litigant. Contrast Georgia Public Service Commission v. United States, 1931, 283 U.S. 765, 51 S.Ct. 619, 75 L.Ed. 1397, and In re Barratt's Appeal, 1899, 14 App.D.C. 255, in both of which the administrative agency adhered to its earlier ruling without such hearing and consideration as the record shows here. We conclude that this case presents no issue of the propriety of res judicata in administrative proceedings. And, res judicata aside, it certainly is not arbitrary for an administrative agency to be guided by its own prior exercise of expert judgment as reflected in its recent decisions.

We next consider the rate of return issue in the light of Panhandle's contention that it has made a showing of new circumstances which justify a higher rate of return than heretofore allowed. Our starting point is the order issued by the commission April 15, 1954 and supported by Opinion No. 269, which concluded Panhandle's rate case then pending at No. G–1116 and other docket numbers by approving certain rate increases as of May 1, 1954. A 5¾ percent overall rate of return, rather than a 6½ percent or higher rate then sought by Panhandle, was allowed in that order. The present proceeding was instituted on June 30, 1954, 75 days after the decision in No. G–1116, by filing tariffs revised to yield a 6¾ percent rate of return. Since hearings in No. G–1116 ended in May 1953 and Panhandle presented its case in chief in the present proceeding in October 1954, the parties are agreed that occurrences between May 1953 and October 1954 may be used and should be considered in justification of a higher rate of return. Actually, Panhandle was permitted to make whatever showing it could or would with reference to such recent changes. The motions to dismiss put into the issue the question whether it had succeeded in that effort.

Panhandle argues that it has shown significant changes in three respects; in its capital structure, in the cost of debt capital, and in the matter of comparative earnings-price ratios on common stocks of similar companies.

■ As to the second and third of these items we think it clear that Panhandle did not make any significant showing of changed circumstances, but rather sought to have the commission reconsider certain theories which underlay its earlier rulings. Nothing helpful to Panhandle's position was shown by way of events in 1953 and 1954 indicating that it had experienced or was facing a higher cost of debt capital than earlier evidence of historic cost indicated. Rather, Panhandle contended, as it had urged unsuccessfully in earlier litigation, that the commission should use as the cost of debt capital a hypothetical figure in the nature of an expert estimate of what financing costs would be if Panhandle had a hypothetical standard capital structure. Similarly, the basic issue raised by Panhandle with reference to comparative earnings-price ratios of natural gas company common stocks was not that any significant change in circumstances had occurred but rather that such computations and comparisons are unsatisfactory guides to a fair rate of return. Thus the commission's rejection of Panhandle's contentions on these two points represented a difference of judgment on debatable theory as to the most satisfactory way of estimating a fair rate of return, rather than any refusal to take into account evidence of recent occurrences. We are satisfied that the commission's action, viewed in this light, was neither arbitrary nor unreasonable. It was an entirely permissible exercise of judgment with reference to a subject matter peculiarly within the area of its special competence and knowledge.

■ The remaining matter urged in justification of a higher rate of return is the claim that Panhandle's capital structure has changed. Any such change may be relevant because an approved overall rate of return characteristically is achieved by a computation allowing a much higher return on equity capital than on borrowed capital. Panhandle says that since hearings closed in the earlier case there has been a substantial increase in the equity component of its capital structure and that the overall rate of return should be adjusted upward to reflect that change. The commission counters by denying that any such change has in fact been shown. It points out that Panhandle, in its computation of equity capital, has included a large item of surplus which stands earmarked for refund to certain customers in a pending proceeding. We think the commission's insistence that this item be eliminated was reasonable and proper. The commission also points out that, although Panhandle insists generally on the relevancy of events up to the very time of hearing, in calculating its present capital structure it has ignored a recent change unfavorable to its present argument. More particularly, it has based argument upon its capital structure as of March 31, 1954, ignoring a very substantial increase in debt capital which resulted from the sale of thirty-five million dollars in debentures in June 1954. Thus, the commission says that it is only by an unjustified inclusion and an equally unjustified omission in its computation that Panhandle is able to show any significant change of capital structure favorable to the allowance of a higher overall rate of return. Our study and analysis of the record leads us to agree with the commission.

The next controverted ruling is one which required the elimination of an item representing "minimum bank balances" from working capital. It is agreed that in calculating the rate base for its revised tariff Panhandle determined its working capital needs in conventional manner, as recently approved by the commission in Opinion No. 269 and other cases, except that it added an item of $3,500,000 representing "mini-

mum bank balances" which Panhandle believes it should maintain. In the present record the justification of this item appears in the prepared statement of an expert witness for Panhandle who testified as follows:

"Substantial cash bank balances must be maintained by Panhandle Eastern in order to operate its business and maintain gas service to its customers. The cash which is permanently available from income tax sources, or sources other than investor's capital is less than $3,-000,000. The minimum cash balances needed to maintain the utility operations and provide for emergencies is approximately $3,500,000 and Panhandle Eastern actually provides for bank balances much in excess of this amount."

In addition Panhandle says that it was by inadvertence that the commission failed to include a minimum bank balance item in its computation of Panhandle's working capital requirement in Opinion No. 269. However, in its present opinion the commission has addressed itself to this contention stating that the omission was not inadvertent but represented its considered judgment. Moreover, the commission points out that in Matter of Michigan-Wisconsin Pipe Line Co., 1954, Opinion No. 275, published shortly after Opinion No. 269, it stated in some detail its views about the inclusion of separate minimum bank balance items as working capital components. As we read that opinion the commission takes the position that its conventional computation of needed working capital includes, among other items, an allowance of one-eighth of a natural-gas company's gross annual operating expenses as a proper and normally adequate allowance for cash requirements. The commission did not rule out the possibility of a larger allowance but indicated that more than conjecture and speculation would be needed to justify such an enlargement.

■ In this case Panhandle has filed a revised tariff predicated on a working capital allowance which includes both the conventional one-eighth of annual operating expenses and an additional allowance for minimum bank balances. But nothing factual is offered to show how or why the normal allowance of one-eighth of annual operating expenses is inadequate, or indeed that it would not suffice to cover, among all other cash requirements, any reasonable contingencies which the proposed additional minimum bank balance allowance is intended to cover. Only the above quoted general statement of Panhandle's witness is offered in justification of this separate and additional item. We think that such a showing is not sufficient to make unreasonable the commission's refusal to vary its conventional and recently sanctioned formulation.

Panhandle makes two other principal complaints; that the commission disapproved its proposed allocation of cost of service in two respects in which that proposal has departed from the allocation approved in Opinion No. 269 and, second, that the commission disallowed a group of proposed tariff changes which the commission described as " * * * major revisions of the plan of Panhandle's rate structure and form of tariff promulgated by us in Opinion Nos. 214 and 214-A, and substantially unchanged by us in Opinion No. 269 and the even more recent Opinion No. 274." As to each of these matters the commission has adopted essentially the same line of reasoning. It says that Panhandle seeks to alter present allocations and rate structures which have recently been fully considered and approved by the commission and that Panhandle has shown no basis in current experience or changed circumstances for a revision of the commission's recent judgment. It is Panhandle's position that this disposition of its contentions either is achieved by an improper use of res judicata or else lacks the support of essential findings and justifications.

What we have said above about res judicata is applicable to these rulings as well as the already considered ruling on rate of return. No more need be added. As to the type of finding which must appear to support the commission's disallowance of these changes, we think the factor of time and the sequence of events are relevant. It has already been noted that it was on April 15, 1954 that the commission in Opinion No. 269 decided a major and comprehensive rate case which grew out of Panhandle's proposals of various substantial rate increases and tariff changes. Only 75 days later Panhandle instituted the present proceeding for another substantial rate increase to be accomplished by sundry tariff changes. True, this is a new proceeding. Yet, without resort to res judicata, we think it appropriate in these unusual circumstances for the commission, after hearing and considering all evidence, to rule without restating or again elaborating findings and justifications, that it will adhere to its very recent conclusions and analyses. The commission's only necessary new concern is with events since its last ruling. But, here again we think rate increases are being proposed so soon after a most elaborate consideration of Panhandle's rates and rate structure that a summary negative finding that no significant intervening change has occurred, is formally sufficient if the record justifies such a finding. In examining the record, we are satisfied that the commission acted reasonably in finding that Panhandle's purported showing of new matter was inadequate to justify either its proposed changes in allocation of cost of service or its proposed changes in rate structure and form of tariff.

We have not overlooked those of petitioner's contentions which are not discussed in this opinion. However, we are not persuaded that any of them has disclosed reversible error.

The order here under review will be affirmed.