87 F.Supp. 324 (1949)
WESTERN UNION DIVISION, COMMERCIAL TELEGRAPHERS' UNION, A. F. OF L.
v.
UNITED STATES et al.
Civ. No. 3670-48.
United States District Court District of Columbia.
May 24, 1949.
*325 *326 *327 Frank Bloom, Harry Isikoff, Washington, D. C., attorneys for plaintiff.
John H. Waters, Wm. G. H. Acheson, New York City, Drain & Weaver, Washington, D. C., for Western Union Telegraph Co.
Herbert Bergson, Asst. Atty. Gen., George Morris Fay, U. S. Atty., Edward Dumbauld, attorney for U. S., Wm. D. McFarlane, attorney for U. S., Benedict P. Cotton, General Counsel, Federal Communications Commission, Harold J. Cohen, Asst. General Counsel, Federal Communications Commission, Max Goldman, Actg. Asst. General Counsel, Federal Communications Commission, Washington, D. C., for defendant.
Before PRETTYMAN, Circuit Judge, and HOLTZOFF and TAMM, District Judges.
TAMM, District Judge.
Plaintiff, a national labor union representing affected employees, brings this action to set aside, annul and permanently enjoin the enforcement of an Order and Authorization adopted by the Federal Communications Commission on May 27, 1948 and issued on June 7, 1948, which Order and Authorization granted an application of the Western Union Telegraph Company for authority under § 214 of the Communications Act of 1934[1] to discontinue its operation of six Class 1-B telegraph offices, and to substitute in lieu of Western Union operation, an agency office to be operated by the respective local telephone company operating in each community. The intervenor-defendant, The Western Union Telegraph Company, is a corporation engaged in furnishing public telegraph communication in the six communities in Ohio which are involved in this application, as well as at various points throughout the United States and in some foreign countries.
The jurisdiction of this Court rests on the provisions of Section 402(a) of the Communications Act of 1934, as amended,[2] incorporating therein certain provisions of the Urgent Deficiencies Act of October 22, 1913[3] relating to the enforcing and setting aside of the Orders of the Interstate Commerce Commission and Title 28, United States Code Annotated, Sections 1398, 2284 and 2321-2325 revising, reenacting and codifying certain provisions of said Act of October 22, 1913.
The statutes involved are Section 214 of the Communications Act of 1934, as amended by Public No. 4, 78th Congress, 1st Session, approved March 6, 1943, 57 Stat. 11, 12; Act July 26, 1947, c. 343, § 205 (a), 61 Stat. 501[4]; and Sections 7 and 8 of the Administrative Procedure Act, 60 Stat. 241, 242[5].
The plaintiff in its Complaint charges that the Federal Communications Commission in issuing its Order and Authorization of June 7, 1948 acted in an "illegal and void" manner for the reasons that:
"1. The Order and Authorization is contrary to the anti-monopoly laws.
"2. The Telephone Company of Ohio is not a proper agent.
"3. Plaintiff was not accorded a fair hearing, in that there was considered as evidence, by the Commission, matter not in the record.
*328 "4. No proposed report as to certain material evidence and issues was prepared and served upon the Plaintiff by the Commission, as provided by the Administrative Procedure Act.
"5. The Commission has disregarded its own findings in order to achieve a result violative of law.
"6. The Order and Authorization are contrary to the public interest and do not meet the requirements of Section 214 of the Communications Act of 1934 as amended.
"7. The Order of the Commission of May 27, 1948 issued simultaneously with and as a part of its disposition of Exhibits `A' and `B' is an abuse of the Commission's discretion and is arbitrary and improper."
The intervenor-defendant, Western Union Telegraph Company, filed a motion to dismiss the Complaint on the ground that the plaintiff lacked legal capacity to maintain this action. The Government filed a motion for summary judgment on the pleadings and exhibits. Oral argument was heard by the Court on April 12, 1949, counsel having previously stipulated that the parties were in complete agreement as to the facts, and that arguments before the Court would relate only to the question of law arising from the stipulated facts. Briefly stated the facts in this case are as follows:
The application which initiated the proceedings resulting in the Commission Order of May 27, 1948, was filed by Western Union with the Federal Communications Commission on December 27, 1946 and amended pursuant to motion filed May 28, 1947. In the application, Western Union requested authority to close its main office at each of six communities in Ohio and to substitute, in lieu thereof, service through a teleprinter-operated agency office to be established in the office of, and to be operated by, the respective local telephone company operating in each community. Such telephone companies are managed by The Telephone Service Company of Ohio. Under the terms of a contract between Western Union and The Telephone Service Company of Ohio on behalf of itself and the companies under its management, the respective telephone companies, upon a grant of this application, will provide telegraph service as agents of Western Union in each of the six communities involved. In addition, it is also provided in the contract that telephone companies under the management of The Telephone Service Company of Ohio will act as Western Union agents in 116 communities adjacent to the six involved in this application.
At the time of the merger of Postal Telegraph, Inc., and Western Union in October, 1943, Postal had a number of agency agreements with telephone companies serving various communities in Ohio, functioning under the management of The Telephone Service Company. Under the terms of these agreements the telephone companies furnished 24-hour telegraph service to various Ohio communities through a combination of direct office representation and subscriber telephone stations. At certain of these places, including the six communities in the instant application, Western Union also maintained company-operated offices. Subsequent to the merger, when the operations of the Postal and Western Union were integrated, Postal's agreements with The Telephone Service Company of Ohio were kept in effect by Western Union in order to continue the rendition of 24-hour telegraph service in these communities, not then available at the Western Union offices.[6] According to the application filed with the Federal Communications Commission and testimony offered by the Western Union Telegraph Company at the hearings held on this application, the telephone companies did not realize sufficient revenue from the handling of telegraph traffic after the merger to justify continued participation in telegraph operations under the arrangements then in effect. On May 8, 1946, Western Union concluded an agreement with The Telephone *329 Service Company, and it is to effectuate this agreement that the application was filed.
Essentially, the plan is to relocate the teleprinter and associated telegraph equipment presently in use in Western Union's company-operated offices in the commercial offices of the respective telephone companies where the equipment would be operated by personnel trained by Western Union but employed by and under the direct supervision of the telephone company.
After the filing of the application by Western Union Telegraph Company with the Federal Communications Commission a hearing upon the application was held in Mt. Gilead, Ohio, one of the communities involved, on May 14 and 15, 1947, pursuant to the Commission's Order of April 10, 1947, designating the application for hearing.
Western Union appeared at the hearing and offered evidence in support of its application. Appearances were also entered on behalf of The Commercial Telegraphers' Union (plaintiff herein), The Telephone Service Company of Ohio and the National Association of Railroad and Utilities Commissioners, who were given leave to intervene by the Commission's Order designating the application for hearing. The Hydraulic Press Manufacturing Company appeared at the hearing and was permitted to intervene upon motion before the Commission.
A motion to reopen the record for the purpose of introducing certain exhibits annexed thereto was filed by plaintiff on June 20, 1947, and subsequently withdrawn by letter dated August 7, 1947.
On June 30, 1947, Brief and Argument were filed by plaintiff, and Proposed Findings of Fact and Conclusions were filed by Western Union. The Commission adopted a Proposed Report on February 12, 1948, in which it concluded that neither the present nor future public convenience and necessity would be adversely affected by a grant of the application. A copy of the Proposed Report was sent to the Public Utilities Commission of Ohio and by letter dated February 24, 1948, the Ohio Commission advised that it had "no specific comment to make in favor of or in opposition to the factual situations as developed" in the Proposed Report; however, comments were made with respect to jurisdictional aspects of the case. The National Association of Railroad and Utilities Commissioners also filed on February 24, 1948, a statement commenting with respect to the jurisdictional problem but did not discuss the merits of the Proposed Report. On March 4, 1948, plaintiff filed exceptions to the Proposed Report and requested oral argument. On March 9, 1948, Western Union filed comments with respect to the above-mentioned letter and statement of the Ohio Commission and the National Association of Railroad and Utilities Commissioners, respectively; and, on March 16, 1948, filed a statement in support of the Proposed Report.
Oral argument was held before the Commission en banc on March 22, 1948, at which time the record was reopened for the purpose of receiving two additional exhibits upon request of the plaintiff.
On April 6, 1948, plaintiff filed a motion to reopen the record and take further evidence with respect to correspondence between the Commission and the Department of Justice in regard to the application herein. Opposition to this motion was filed by Western Union on April 9, 1948; and a Supplemental Memorandum was filed by plaintiff on April 15, 1948.
On May 26, 1948, plaintiff filed a second motion to reopen the record; this time to receive in evidence the current bargaining agreement between Western Union and plaintiff. Opposition to this motion was filed by Western Union on June 1, 1948.
The motion of April 6, 1948, was dismissed in the Commission's Final Report adopted May 27, 1948, and issued June 7, 1948. The motion of May 26, 1948, was denied in a separate Order, dated May 27, 1948.
The Commission adopted a Final Report on May 27, 1948, and issued, the same on June 7, 1948. A majority of the Commission found and concluded that a grant of Western Union's application would not adversely *330 affect the present or future public convenience and necessity, and the Order and Authorization granting the application was adopted and issued at the same time. Two Commissioners dissented, and one Commissioner, who joined in the majority decision, appended additional views.
As basis for its decision and order, the Commission found in its Report that the proposed agent was capable, by reason of experience, availability of trained personnel, and financial qualifications, to render the service as proposed in the application; that the proposed telephone company-operated agency offices should provide service equal to, if not better than, that presently available through the Western Union Class 1-B offices in the six communities involved; that improved and additional services of value to those communities, as well as to 116 communities adjacent thereto, would result; that lower charges to the public for service in many instances would result; that certain savings would result to Western Union under the proposed agency operation if gross operating revenues at each of the six communities continued at present levels, and that it did not appear that a substantial reduction, if any, in telegraph revenue should result from the proposed agency operation.
With respect to the applicability of the Federal anti-trust laws, the Commission stated that its decision should not be construed as a determination as to whether or not operations pursuant to the agreement between The Telephone Service Company of Ohio and Western Union might or would result in any violation of any law relating to monopolies or unreasonable restraints of trade. However, the Commission did give consideration to the effect on competition of a grant of the application, and concluded that approval in this case would not have substantial effects on competition generally in the absence of a widespread program of such conversions and that there was no evidence before the Commission to show that Western Union contemplated such a program. The Commission also found that whatever effects there may be on competition in this situation were out-weighed by the benefits which it had found would inure to the public from the proposal and that the incentive from commissions accruing to the proposed agency operations by Western Union, as represented by it on the record, would serve to mitigate the effects on competition from such arrangements.
Upon the basis of the above findings the Commission concluded that neither the present nor future public convenience and necessity would be adversely affected by a grant of the application.
A petition for rehearing and stay was filed by plaintiff on June 18, 1948. An opposition to the petition was filed by Western Union on June 28, 1948. Comments in support of the petition were filed by plaintiff on July 23, 1948. The petition was denied by the Commission's Order of August 4, 1948.
On August 5, 1948 plaintiff filed a motion to stay the effective date of the Commission's Order and Authorization pending institution of appropriate court proceedings to obtain judicial review. Opposition to this motion was filed by Western Union on August 10, 1948. By Order, dated August 19, 1948, the Commission suspended the operation of its Order and Authorization for a period of 30 days, and thereafter plaintiff filed its complaint in this court.
The first grounds upon which plaintiff bases its action is that the Order and Authorization of the Federal Communications Commission is "contrary to the anti-monopoly laws". While the Federal Communications Commission made no formal finding upon the possibility of an Anti-Trust Law violation occurring from the consummation of the proposed agency agreement, it did, according to the record before this Court refer the contract between the Western Union Telegraph Company and The Telephone Service Company of Ohio to the Department of Justice. The record discloses that the Federal Communications Commission did by letter of August 17, 1947, refer to the Department of Justice the contract between Western Union Telegraph Company and The Telephone Service Company of Ohio, for study to determine if the proposed agreement *331 would "eliminate competition and constitute a merger in violation of the Federal Anti-Trust laws". The Department of Justice, by its letters of August 29, 1947 and October 24, 1947, was of the opinion that there was no violation of the Federal Anti-Trust laws. Although the Federal Communications Commission did not consider the exchange of correspondence as evidence in the preparation of its Report, the Court has given consideration to this correspondence since it constituted a specific item in the plaintiff's complaint. The Court has reviewed this contract and Report in the light of all of the facts in this situation, as measured by the pertinent provisions of the Sherman Act[7] and the Clayton Act of October 15, 1914.[8] The proposed arrangement certainly does not constitute a "merger", nor does it establish any "restraint of trade". The public will still have available the alternate means of communication, of the telephone or of the telegraph, and the only physical change is that the members of the public desiring to send a telegram will proceed to the public office of the telephone company, instead of the public office of the telegraph company to send a telegram over telegraph-company-owned and supervised equipment, and telegraph-company-owned and operated wires. The operator of the telegraph-company equipment in the telephone company office, while paid by the telephone company, will be trained by the telegraph company. Messages will pass from the telephone company office over Western Union wires to the nearest relay office of the Western Union Telegraph Co. The Court emphasizes that the public will still be left a choice between telephone and telegraph service at the six affected communities and that the proposed change in these communities to the agency operation "will result in benefits to the public". While it is true that there may be some "lessening of competition" such results are not, per se, prohibited by Congress in the Sherman and Clayton Acts. The phraseology "lessening of competition" is fundamentally descriptive of a factor judicially used as a determinant in dealing with factual situations to establish whether a prohibitive statutory restraint of trade or monopoly results from a particular state of facts. The test applied by the Supreme Court in the Columbia Steel case[9] is whether the elimination of competition constitutes an "unreasonable restraint", since only unreasonable restraints are forbidden.[10]
A further factor of importance in the Court's opinion upon the matter of the applicability of the Anti-Trust laws to this case is the fact that the proposed agreement is undertaken only after formal approval by the appropriate Government agency. In fact § 214 of the Communications Act[11] requires a certificate from the Federal Communications Commission approving the proposed action before it can be legally undertaken. The Court of Appeals for the District of Columbia has ruled that transactions which might be illegal under the Anti-Trust laws "if * * * brought about by [private] agreements or other devices" may well be legal if effectuated with [proper] government sanction. Mr. Justice Edgerton, speaking for the Court in Mackay Radio & Telegraph Co. v. F .C. C., 68 App.D.C. 336, at page 338, 97 F.2d 641, at page 643, in discussing similar circumstances pointed out that "The anti-trust laws are aimed at private action, not at governmental action." The Court, therefore, rules that the proposed Order and Authorization cannot be set aside, annulled or enjoined on the grounds that it is contrary to the "antimonopoly laws."
Plaintiff's second ground for its action is that The Telephone Company of Ohio is not a proper agent. Plaintiff cites references in the record before the Federal *332 Communications Commission to allegedly poor telephone service now being rendered by The Telephone Service Company of Ohio, particularly through The Ohio Central Telephone Company at Mt. Gilead, Ohio, and contends that the quality of telegraph service now being received in the area served by The Telephone Service Company of Ohio will be adversely affected by the grant of the application.
The Telephone Service Company of Ohio is an independent telephone company, unaffiliated with the Bell System. It conducts a general telephone business in the State of Ohio through various subsidiary and affiliated corporations owning and operating telephone exchanges in various cities and towns in Ohio, including the six communities involved in the subject application. Each of the local telephone companies through which telegraph service is to be rendered under the proposed agency arrangements is in a financially sound condition. The proposed agent and its operating companies have had substantial experience in rendering telegraph service as agent of the Ohio Postal Telegraph-Cable Company in a large number of communities until the merger of the latter company with Western Union in 1943, and as agent of Western Union in a number of communities since merger.
Several references appear in the record of the proceedings before the Federal Communications Commission to allegedly unsatisfactory telephone services now being rendered by the proposed agent, particularly at Mt. Gilead, Ohio, on the basis of which plaintiff argues that the Commission's conclusion that the proposed agent is qualified to provide telegraph service "is contrary to the evidence." From a consideration, however, of the evidence which is pertinent to this matter and which is entirely ignored by the plaintiff, it is apparent that the causes of such unsatisfactory telephone service do not reflect upon the telephone company's qualifications or ability to act as an agency for telegraph service as proposed in the application or otherwise indicate that the quality of telegraph service under agency operation will be affected to any greater extent thereby than under present arrangements.
The Commission heard evidence that the inability of the telephone company to provide a quality of telephone service desired by the public has been due to wartime shortages of equipment and trained personnel, and that the telephone company has been making every effort to overcome these deficiencies by the construction and installation of new facilities already on order from the manufacturers. Moreover, the Commission was advised that under the agency agreement between the telephone company and Western Union, the latter will furnish, install, and maintain in all major respects the equipment to be used in the agency offices; and, that a number of teleprinter operators experienced in telegraph operations are available to the proposed agent and that others will be trained by Western Union. Other evidence was considered by the Commission in reaching its conclusion that The Telephone Service Company of Ohio was a competent agent, and the dissenting opinion of two Commissioners states that "We do not challenge the finding of the majority that, under existing circumstances, the substitution of telephone company agencies for the Western Union offices will result in benefits to the public as well as to Western Union."[12]
The Court is precluded from substituting its judgment on such matters for that of the Commission.[13] The record contains *333 substantial evidence supporting the Commission's findings and those findings are, consequently, conclusive. "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body."[14]
Plaintiff next contends that it was not accorded a fair hearing, in that there was considered as evidence by the Commission, matters not in the record. This contention, apparently, relates to the correspondence exchanged between the Federal Communications Commission and the Department of Justice on the question of the applicability of the anti-trust laws. It appears, however, that the correspondence in question resulted from plaintiff's suggestion in its "Brief and Argument" filed with the Commission that the contract between Western Union and The Telephone Service Company of Ohio be referred by the Commission to the Department of Justice for investigation and prosecution under the anti-trust laws. In its proposed Report the Commission quoted the following excerpt from the Department of Justice letter of October 24, 1947: "We see no merit in the contention that a designation of telephone companies to operate 13 telegraph offices as agents of the Western Union Company would constitute a merger of the telephone and telegraph companies. We believe that the inclusion of the clause which you suggest in your letter would be adequate protection to the Government from the standpoint of the anti-trust laws in the event the Commission decides to approve the application for closure of Western Union's offices at designated points and the substitution of telephone agency offices."
It does not appear, however, that the Commission considered the above letter as evidence or that it based any findings of fact upon this correspondence either in its Proposed Report or in its Final Report. In its Final Report the Commission stated that in view of the plaintiff's objection to consideration of the correspondence it had given no consideration to the correspondence in arriving at its final decision.[15] The Court concludes that the record affords no basis for support of this contention of the plaintiff.
Plaintiff next charges that no proposed report as to certain material evidence and issues was prepared and served upon the plaintiff by the Commission, as provided in the Administrative Procedure Act. In paragraph "Thirteenth" of its Complaint, plaintiff charges that the Commission "did not pass upon the evidence as to the violations of the anti-trust laws, but asserted merely that its order would not be a protection or defense against a charge of violation of said laws". The same paragraph of the Complaint states that: "It was only upon the insistence of plaintiff, in its exceptions and upon oral argument, that the Commission had considered the effect of the anti-trust laws, and has made findings of fact thereon, but no proposed findings on the anti-trust issues or facts were ever submitted to plaintiff, despite plaintiff's insistence at the oral argument and in exceptions, all a part of the record before the Commission, that such procedure was necessary in order to comply with the Administrative Procedure Act."
While plaintiff does not identify the specific section of the Administrative Procedure Act which it contends has been violated, the Court assumes from the record before it that reference is made to 5 U.S. C.A. § 1007.[16] Section (a) requires the issuance of tentative decisions in certain cases. The Federal Communications Commission designated a presiding officer to take evidence in this proceeding. The Commission issued a "Proposed Report" on the application of Western Union Telegraph Company which report meets the "tentative decision" requirement of § 8(a) *334 of the Administrative Procedure Act. The Commission's Proposed Report was issued in lieu of a recommended decision by the presiding officer who conducted the hearing. Prior to the issuance of the Proposed Report, plaintiff was afforded an opportunity to file proposed findings of fact and conclusions of law, but instead plaintiff filed a "Brief and Argument" which contended that the Western Union application for approval of the agency contract should be denied because it constituted an "unlawful merger" of the telegraph and telephone companies, in violation of the anti-trust laws. Plaintiff's argument in this regard was considered and rejected by the Commission.[17] Plaintiff thereafter filed a statement of exceptions to the Proposed Report, as provided in § 8(b) of the Administrative Procedure Act, these exceptions reiterating plaintiff's contention that the agency arrangement violated the anti-trust laws. Plaintiff's exceptions included a request for oral argument before the Commission en banc, which hearing was granted pursuant to the provisions of § 409(a) of the Communications Act.[18] At the hearing held by the Commission, plaintiff took virtually the same position contending that the Commission should withdraw its Proposed Report and issue findings on the question of whether the anti-trust laws had been violated. The Commission thereafter issued its Final Report in which it devoted several pages to the consideration of the "applicability of Federal Anti-Trust Laws."[19] The Commission, while holding that it had "no duty as to enforcement of the Federal Anti-Trust laws" (Italics supplied), nevertheless stated that "the effect on competition of a grant of the application before us is a material consideration in applying the standard of `public convenience and necessity' in Section 214 of the Communications Act." Thereafter the Commission enumerated the factual considerations on this point which the evidence had brought forth and which the Commission held were such as to justify it in concluding that there appeared to be no reason to deny to the public "at this time the improved and additional services of value which the subject conversions to agency operation will provide."[20]
Thus it appears that the Commission carefully considered the plaintiff's contention concerning the anti-trust laws, after affording plaintiff its statutory right to file and argue is exceptions to the Proposed Report. That the Commission did not adopt plaintiff's contention nor accede to its argument does not constitute a violation of the Administrative Procedure Act on the part of the Commission. The purpose of the cited provisions of the Administrative Procedure Act, supra, is to insure procedures by which parties may be fully informed of the issues and proposed grounds of decision and be afforded full opportunity to be heard upon these issues and grounds. Plaintiff was afforded all opportunities required by the Administrative Procedure Act.
Plaintiff further contends that the Commission disregarded its own findings in order to achieve a result violative of law. This contention set out at length but without clarity is the subject of paragraphs numbered "Eighth", "Ninth" and "Tenth", pages 3 to 6 of the Original Complaint. In essence, plaintiff charges that the findings of the Commission as to the applicability of the anti-trust laws were in direct conflict with certain enumerated sections of the testimony offered during the Commission's hearings. Plaintiff challenges the Commission's Report in which the Commission concedes a diminution of competition as reaching a result "directly in conflict with the basic laws of the country promoting competition and prohibiting monopolies." Plaintiff further argues on this point that the Commission's findings are in complete abrogation of the Commission's *335 previous position.[21] Plaintiff further charges the Commission's Report is contrary to evidence relating to Western Union Telegraph Company's proper supervision of the proposed [agency] operations.
The Court's findings upon these points are adverse to the plaintiff because the testimony cited by plaintiff is not the only or predominant testimony upon the several points specified, and as set forth, supra, the Court finds that there is reasonable evidence to support the Commission's findings.
The sixth basis for plaintiff's action charges that "The Order and Authorization are contrary to the public interest and do not meet the requirements of § 214 of the Communications Act of 1934 as amended [supra]." This section provides that: "(a) No carrier shall undertake the construction of a new line or of an extension of any line, or shall acquire or operate any line, or extension thereof, or shall engage in transmission over or by means of such additional or extended line, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line: Provided, That no such certificate shall be required under this section for the construction, acquisition, or operation of (1) a line within a single State unless such line constitutes part of an interstate line, (2) local, branch, or terminal lines not exceeding ten miles in length, or (3) any line acquired under section 221 or 222 of this title: Provided further, That the Commission may, upon appropriate request being made, authorize temporary or emergency service, or the supplementing of existing facilities, without regard to the provisions of this section. No carrier shall discontinue, reduce, or impair service to a community, or part of a community, unless and until there shall first have been obtained from the Commission a certificate that neither the present nor future public convenience and necessity will be adversely affected thereby; except that the Commission may, upon appropriate request being made, authorize temporary or emergency discontinuance, reduction, or impairment of service, or partial discontinuance, reduction, or impairment of service, without regard to the provisions of this section. As used in this section the term `line' means any channel of communication established by the use of appropriate equipment, other than a channel of communication established by the interconnection of two or more existing channels:"
Thus the standard required by the statute to be applied by the Commission is that of "public convenience and necessity" with a finding that "neither the present nor future public convenience will be adversely affected" by the proposed action. The standard of "public convenience and necessity" is to be so construed as to secure for the public the broad aims of the Communications Act.[22] The purpose of the Act as set forth in § 1 thereof is "to make available, so far as possible, to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges". 47 U.S.C.A. § 151. The Commission's Report sets forth in detail the effects of the proposed agency agreement upon telegraph *336 service and facilities in the six communities involved; it considered the probable financial effects of the proposal upon the earnings of the companies involved; reviewed the probable costs of the telegraph services to the communities in question; set forth the improved facilities which will result from the merger and, as set forth heretofore, considered as a factor in applying the standard of "public convenience and necessity" the effect on competition of the grant of the application of Western Union Telegraph Company for the authority for the agency arrangement.[23]
The Court must, in view of these considerations, reject plaintiff's contention on this point.
The final ground for plaintiff's action is that the Order of the Commission May 27, 1948 is "an abuse of the Commission's discretion and is arbitrary and improper". The Order of May 27, 1948 denies plaintiff's motion that the record of the Commission be reopened for the purpose of receiving in evidence the current bargaining agreement between Western Union Telegraph Company and the plaintiff. Plaintiff's motion was filed on May 26, 1948. The basis for the Commission's rejection thereof is as follows:
"It Appearing, That, pursuant to the terms of the Commission's Order of April 10, 1947, the Union intervened and participated fully in the proceedings herein; that hearings were held on May 14 and 15, 1947, and a Proposed Report was issued on February 13, 1948; that exceptions to said Proposed Report have been filed by the Union, and pursuant to the request of said Union, oral argument was held before the Commission en banc on March 22, 1948;
"It Further Appearing, That the motion of the Union to reopen the record herein is not timely inasmuch as the existence of the particular contract provisions mentioned above was known by the Union throughout the proceedings herein, and the Union had ample opportunity to offer such provisions for the record."
The pertinent portion of the contract, which plaintiff believes material and relevant *337 to this proceeding is Article 52(R) (3): "The Company agrees it will not contract out any work which will result in loss of employment for employees covered by this agreement". The plaintiff, pointing out that the Federal Communications Commission is familiar with the contract between plaintiff and Western Union Telegraph Company, since this contract was involved in lengthy hearings before the Commission, contends that the Commission having "over-all control of the Western Union System" should have considered as a part of its action in the present case, the effect of the Commission's action upon the Western Union Telegraph Company's contractual obligations. The record before the Court discloses that the Western Union Telegraph Company filed its application with the Federal Communications Commission on December 27, 1946, amending the application on May 28, 1947. The plaintiff entered its appearance at the hearing held on May 14 and 15, 1947, and was a party to the proceedings, as set out heretofore, at all times thereafter. Under the circumstances the plaintiff had ample and adequate time; to-wit, a full year, in which to file the contract in question. Plaintiff was fully advised as to the advancing state of the proceedings, had filed exceptions to the Proposed Report, and had argued its exceptions to the Proposed Report on March 22, 1948. Filing of the motion to reopen on May 26, 1948 was not timely and the action of the Commission in not reopening the record was not an abuse of the Commission's discretion.
Reverting now to the core of the dispute, the central question is whether the Commission has power to approve an agreement between a telegraph company and a telephone company, if the effect of the agreement is to lessen competition between the companies in a given locality. The Commission says that the effect of the agreement in the present case will be a lessening of competition. We are quite mindful of the plain implications in the opinion in McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544, that, absent a specific congressional permission, an administrative agency cannot validate an agreement between competitors which is otherwise invalid under the anti-trust laws. But not every agreement between competitors is illegal. The question before us is whether the facts in this record reflect a lessening of competition of such substance as to be illegal under the Columbia Steel and similar cases. It is true that the telegraph equipment in these communities is to be in the hands of the telephone company and the initial telegraph service to the customer is to be by a telephone employee. And therein is a lessening of the competition. But the telegraph service to the public remains just as it was, both in character and in extent. It remains telegraph service, over telegraph equipment. And the companies are to retain their respective advertising efforts. The considerations which induce a person to send a telegram instead of making a telephone call, and vice versa, will remain exactly as they are. And the facilities for each service will be made exactly as available to the customer as they are now.
It seems to us, as it did to the Commission and to the Department of Justice, that the lessening of competition reflected by these particular facts is more theoretical than real. We do not have before us a major plan to adopt generally this same sort of agency substitution. If we did, we would have a different problem. But we think that we cannot magnify the miniature factual lessening of competition shown in this instance into a test case for the decision of a major question of law.
As a result of the Court's findings, the defendant's Motion for Summary Judgment is granted. Since the Court has considered this case upon its substantive merits, it is unnecessary to pass upon the motion of the Western Union Telegraph Company for the dismissal of the Complaint.[24]
NOTES
[1] 47 U.S.C.A. § 214.
[2] 47 U.S.C.A. § 402(a).
[3] 38 Stat. 219.
[4] 47 U.S.C.A. § 214.
[5] 5 U.S.C.A. §§ 1006 and 1007.
[6] The effect of Section 214 of the Communications Act of 1934, as amended, effective March 6, 1943, was to prevent Western Union from reducing the hours of service to these communities, unless otherwise authorized by the Commission.
[7] 15 U.S.C.A. §§ 1-7, 15 note.
[8] 15 U.S.C.A. §§ 12-27, incl.
[9] United States v. Columbia Steel Company et al., 334 U.S. 495, 68 S.Ct. 1107, 92 L.Ed. 1533.
[10] The Standard Oil Company v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L. Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas. 1912D, 734.
[11] 47 U.S.C.A. § 214.
[12] Dissenting opinion of Commissioners Coy and Durr.
[13] Gray v. Powell, 314 U.S. 402, 412, 62 S.Ct. 326, 86 L.Ed. 301; Rochester Telephone Corp. v. U. S., 307 U.S. 125, 146, 59 S.Ct. 754, 83 L.Ed. 1147; Mississippi Valley Barge Line Co. v. U. S., 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260; Western Paper Makers' Chemical Co. v. U. S., 271 U.S. 268, 271, 46 S.Ct. 500, 70 L.Ed. 941; Virginian Railway Co. v. U. S., 272 U.S. 658, 665-66, 47 S.Ct. 222, 71 L.Ed. 463; Georgia Public Service Commission v. U. S., 283 U.S. 765, 775, 51 S.Ct. 619, 75 L.Ed. 1397; Swayne & Hoyt, Ltd., v. U. S., 300 U.S. 297, 303, et seq., 57 S.Ct. 478, 81 L.Ed. 659.
[14] Mississippi Valley Barge Line Co. v. U. S., supra [292 U.S. 282, 54 S.Ct. 694]; Rochester Telephone Corp. v. U. S., supra; I.C.C. v. Jersey City, 322 U.S. 503, 512-513, 64 S.Ct. 1129, 88 L.Ed. 1420; McLean Trucking Co. v. U. S., 321 U.S. 67, 88, 64 S.Ct. 370, 88 L.Ed. 544.
[15] Page 24, Footnote 1, last sentence.
[16] §§ 8(a) and (b) of Administrative Procedure Act.
[17] Record of proceedings before the FCC, p. 683.
[18] 47 U.S.C.A. § 409(a).
[19] pp. 23 to 26 of Commission's Final Report.
[20] p. 26 of Commission's Final Report.
[21] Commission's Report on Chain Broadcasting, p. 4, footnote 3 of Complaint, that in "The absence of Congressional action exempting the industry from the anti-trust laws, we are not at liberty to condone practices which tend to monopoly and contractual restrictions destructive of freedom of trade and competitive opportunity."
[22] Cf. Interstate Commerce Commission v. Parker, 326 U.S. 60, 69, 65 S.Ct. 1490, 89 L.Ed. 2051; New England Divisions Case (Akron, C. & Y. R. Co. v. United States), 261 U.S. 184, 189, 43 S.Ct. 270, 67 L.Ed. 605; Interstate Commerce Commission v. Railway Labor Executives Ass'n, 315 U.S. 373, 376-377, 62 S.Ct. 717, 86 L.Ed. 904; United States v. Lowden, 308 U.S. 225, 230, 60 S.Ct. 248, 84 L.Ed. 208; Texas & N. O. Ry. Co. v. North Side Belt Ry. Co., 276 U.S. 475, 479, 48 S.Ct. 361, 72 L.Ed. 661.
[23] In its Final Report, the Commission stated: "Although we have no duty as to enforcement of the Federal Anti-trust laws, the effect on competition of a grant of the application before us is a material consideration in applying the standard of `public convenience and necessity' in Section 214 of the Communications Act. We are appreciative of the fact that traditionally, a regulated public utility, such as Western Union, is monopolistic within its particular field of operations. However, here we have a proposal whereby the telegraph company will be turning over to a telephone company, a normal competitor, its operations in certain communities. Accordingly, it is material to consider the particular facts and circumstances which compose the arrangements in question.

"Under the arrangements between Western Union and The Telephone Service Company of Ohio, it is not unreasonable to expect a diminution in the competition as it now exists between the two carriers in the six communities involved as well as in the 116 communities adjacent to those covered by the application. On the other hand, a grant of the application herein will afford to the public improved and extended services of value which are not presently provided by Western Union in those communities. In this regard, we refer to our findings heretofore made which indicate the extent of these benefits to the public. Among these benefits is the fact that under the proposed agency arrangements, telegraph service will be available to the public 24 hours daily through a teleprinter-operated agency office in each community, in contrast to present arrangements under which service during the closed hours of the Western Union office is, for the most part, by telephone to or from open Western Union offices in nearby communities, with the telegraph patron generally paying the applicable telephone toll charges. Reduced charges through elimination of after-hour telephone tolls, in addition to billing and collection privileges and 24-hour physical delivery service, not presently available in each community, should add much to the attractiveness of telegraph service. Furthermore, the plan to provide physical representation and to make available 24-hour telegraph service for telephone subscribers through telephone company-operated agency offices at 116 communities adjacent to those covered by the application should stimulate additional telegraph traffic. * * *"
[24] Interstate Commerce Commission v. Railway Labor Executive Ass'n, 315 U.S. 373, 62 S. Ct. 717, 86 L.Ed. 904.