**BROTHERHOOD OF LOCOMOTIVE ENGINEERS**

and

Railway Labor Executives' Association, Plaintiffs,

v.

**UNITED STATES** of America

and

Interstate Commerce Commission, Defendants,

and

Rutland Railway Corporation, State of Vermont, Penick & Ford, Ltd., Incorporated, Intervening Defendants.

Civ. No. C 63–55.

United States District Court
N. D. Ohio, E. D.

May 2, 1963.

Donald W. Fisher, Mulholland, Robie & Hickey, Toledo, Ohio, Harold A. Ross, Marshman, Hornbeck, Hollington, Stead-man & McLaughlin, Cleveland, Ohio, for plaintiffs.

Leonard S. Goodman, Atty., Office of Gen. Counsel, Interstate Commerce Commission, Robert Ginnane, Gen. Counsel, Washington, D. C., for Interstate Commerce Commission.

Thomas W. Lynch, Gen. Counsel, Rutland R. R., Rutland, Vt., Clark, Carr & Ellis, New York City, Victor DeMarco, Herbert J. Hansell, Robert J. Hoerner, Jones, Day, Cockley & Reavis, Cleveland, Ohio, for Rutland Ry. Corp., intervening defendant.

Donald H. Balleisen, New York City, McAfee, Hanning, Newcomer, Hazlett & Wheeler, Cleveland, Ohio, John T. Scott, Jr., Douglas Wick, Cleveland, Ohio, for Penick & Ford, Ltd., Inc., intervening defendant.

Before WEICK, Circuit Judge, CONNELL, Chief District Judge, and KALBFLEISCH, District Judge.

KALBFLEISCH, District Judge.

The Rutland Railroad sought a certificate of public convenience and necessity from the Interstate Commerce Commission allowing it to totally abandon its railroad and the operations thereon. In the proceedings before the Interstate Commerce Commission, numerous parties were represented and heard, including the Rutland Railroad, the Railway Labor Executives' Association, the Brotherhood of Locomotive Engineers, the State of Vermont, the City of Rutland, the Emergency Committee to Save the Rutland Railway, and various shippers.

The Interstate Commerce Commission ultimately granted the certificate of convenience and necessity and refused to impose protective labor conditions. Plaintiffs, the Brotherhood of Locomotive Engineers and the Railway Labor Executives' Association, have filed their complaint in this Court to set aside and enjoin the order of the Interstate Commerce Commission. The United States has requested that the case be remanded to the Commission for further findings of fact regarding the imposition of pro-

tective labor conditions. In addition, the Rutland Railroad, the State of Vermont, Penick & Ford (a major shipper on the Rutland), the Interstate Commerce Commission, the Brotherhood of Locomotive Engineers, and the Railway Labor Executives' Association have all appeared in the proceeding before this Court.

## I. WAIVER OF THE EXAMINER'S REPORT

The Interstate Commerce Commission granted the request of the State of Vermont and the Rutland Railroad that the report of the hearing examiner be omitted. The Commission "found that the due and timely execution of the Commission's functions imperatively and unavoidably required the omission of the examiner's recommended report and order in this proceeding, * * *." (Report of the Interstate Commerce Commission, Division Three, page 3.)

The plaintiffs contend that the omission of this report was reversible error. They base this contention upon the provision of Title 5 U.S.C.A. § 1007(a), which requires a report of the hearing examiner in proceedings covered by that section. In this contention the plaintiffs are in error because Section 1007(a) did not apply to this hearing.

Section 1007 applies only "In cases in which a hearing is required to be conducted in conformity with section 1006 of this title * * *." Section 1006 applies only "In hearings which section 1003 or 1004 of this title requires to be conducted pursuant to this section * *." Therefore, Section 1007 applies only to proceedings held pursuant to either Section 1003 or Section 1004. The instant case was not a Section 1003 proceeding. Therefore, if Section 1007 applied, the action of the Interstate Commerce Commission must have been taken pursuant to Section 1004. Section 1004 applies "In every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing * * *." Therefore, if in the present case there was no statutory requirement

of an agency hearing, neither Section 1004 nor Section 1007 applied.

The instant case was a proceeding taken pursuant to Title 49 U.S.C.A. § 1(18) (19) (20). Section 1(19) is the subsection which provides for the conduct of abandonment proceedings. That subsection requires, in its first sentence, that "The application for and issuance of any such certificate shall be under such rules and regulations as to hearings and other matters as the Commission may from time to time prescribe * * *." There is thus no statutory requirement of a hearing in that first sentence; rather, such matters are clearly left to the Commission's discretion. The only other provisions concerning hearings are contained in the second sentence of Title 49 U.S.C.A. § 1(19), which provides for the giving of notice to the governor of the state where the line is to be abandoned. The subsection gives that official "the right to be heard as hereinafter provided with respect to the hearing of complaints or the issuance of securities * * *." Such right is contained in Title 49 U.S.C.A. § 20a(6), which provides that "The commission may hold hearings, if it sees fit, to enable it to determine its decision upon the application for authority." There is thus no statutory requirement that a hearing be accorded to a governor.

Thus, both in regard to such hearings as may be accorded to private parties and to the governors of the respective states, the determination of whether hearings will be held is expressly left to the Commission. Therefore, this case was not an adjudication "required by statute to be determined on the record after opportunity for an agency hearing * * *" and Section 1007, upon which plaintiffs base their contention of error, did not apply.

Plaintiffs argue, however, that upon the holding of Riss & Company v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345, such hearings must conform to the Administrative Procedure Act and, specifically, to Section 1007. We think

this contention mistakes the holding of the Riss case.

In the proceeding before the Interstate Commerce Commission, Riss & Company, a trucking firm, had sought a certificate of public convenience and necessity to extend its operations. At the original hearing, the presiding officer was not a qualified examiner but, rather, an employee of the Section of Complaints, Bureau of Motor Carriers, of the Interstate Commerce Commission. That Bureau appeared in the proceeding and opposed the plaintiff's application. The presiding officer recommended denial of the application, and the Commission ultimately did deny it. That decision was affirmed by a three-judge District Court in Riss & Company v. United States, 96 F.Supp. 452 (W.D.Mo., 1950), whose decision was reversed by the United States Supreme Court at 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345. The Supreme Court made a per curiam decision without opinion, citing only Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616.

Wong Yang Sung held that deportation hearings for which there was no statutory requirement, but which were required by Constitutional concepts of due process, were not excepted from the provisions of the Administrative Procedure Act. Thus, in such hearings a presiding official could not be a member of the staff or governmental unit which was prosecuting the case. While speaking of statutory language, the Wong Yang Sung opinion is filled with overtones of Constitutional due process requirements. It was undoubtedly this concept which the Court had in mind when it decided Riss & Company v. United States; and it was not unnatural for the Court to connect the two cases because Riss & Company had filed a brief as amicus curiae when Wong Yang Sung was before the Court.

There is, however, language in Wong Yang Sung which supports the position of the Interstate Commerce Commission that the examiner's report could properly be waived. At 339 U.S. 33, 50, 70 S.Ct. 445, 454, the Court said:

"We think that the limitation to hearings 'required by statute' in § 5 of the Administrative Procedure Act exempts from that section's application only those hearings which administrative agencies may hold by regulation, rule, custom, or special dispensation; not those held by compulsion."

The proceedings in the instant case were ones which the agency was discretionarily entitled to hold "by regulation." (Title 49 U.S.C.A. § 1(19) and § 20a(6).) The plaintiffs have not attacked the constitutionality of this statute. Therefore, the very decision upon which the plaintiffs must base their contention that the technical requirements of the Administrative Procedure Act applied in this case commented that such requirements did not apply to proceedings such as these.

■ There was no error in the omission of the examiner's report. However, even if the technical requirements of the Administrative Procedure Act did apply to this proceeding, the omission of the report of the hearing examiner was a proper exercise of the Commission's discretion. Title 5 U.S.C.A. § 1007(a) provides that in cases of an application for an initial license the report of the hearing examiner "may be omitted in any case in which the agency finds upon the record that due and timely execution of its functions imperatively and unavoidably so requires." It is not disputed that the Interstate Commerce Commission found such a requirement in this case, and that finding has not been attacked before this Court. Therefore, if the Administrative Procedure Act applies, the omission was proper if this was an application for an initial license. We think it was.

■ Nowhere does the Act define an "initial license." However, Title 5 U.S.C.A. § 1001(e), provides that the term " 'License' includes the whole or part of any agency permit, certificate, approval, registration, charter, membership, stat-

utory exemption or other form of permission." The Court is informed that the Rutland Railroad held no other licenses to extend or abandon any part of its line. Therefore, the proceeding herein was clearly an application for an initial certificate of public convenience and necessity to abandon this Railroad.

Furthermore, the legislative history of the Administrative Procedure Act indicates that the phrase "application for an initial license" may be interchangeable with "initial applications for licenses." The latter phrase was used by the Senate Committee in its report on the section of the bill which ultimately became Title 5 U.S.C.A. § 1007(a). (Sen. Rep. No. 752, 79th Cong., 1st Sess., p. 30.) This was clearly an initial application for an abandonment certificate, and if this construction of the statute is correct there can be no doubt that this application came within the statutory definition.

The Court believes that this proceeding was an application for an initial license and, if the Administrative Procedure Act applied, the Commission was within its power in dispensing with the hearing examiner's report. Cf. Chotin Towing Corp. v. Federal Power Comm., 102 U.S.App.D.C. 69, 250 F.2d 394, 395 (1957). For other cases in which the omission of the hearing examiner's report has been upheld in varying factual situations, see Watson Bros. Transportation Co. v. United States, 180 F.Supp. 732 (D.Neb., 1960); Canadian Pacific Ry. Co. v. United States, 158 F.Supp. 248 (D.C.1958); Colorado Interstate Gas Co. v. Federal Power Comm., 209 F.2d 717 (10th Cir., 1954), rev. on other grounds, 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583; Western Union Division, Commercial Telegraphers' Union, AF of L v. United States, 87 F.Supp. 324 (D.C. 1949), aff'd., 338 U.S. 864, 70 S.Ct. 148, 94 L.Ed. 530.

Therefore, whether the Administrative Procedure Act applied or not, the omission of the report of the hearing examiner was not error, and the plaintiffs are not entitled to a reversal of the Commission's decision.

## II. IMPOSITION OF PROTECTIVE LABOR CONDITIONS

The plaintiffs and the United States have attacked the Commission's determination on the basis that its findings in regard to the imposition of protective labor conditions were improper.

One facet of this attack is based upon the contention that the Commission failed to exercise its discretion in determining whether protective labor conditions should be imposed but, instead, followed a per se rule of refusing to impose such conditions in any total abandonment proceeding. That contention is based primarily upon one phrase in the Commission's report where it said, "We find no justification in this proceeding for deviating from a long line of precedents more closely related to the present proceeding, and no conditions for the protection of railway employees who may be adversely affected will be imposed." (Report of the Interstate Commerce Commission, Division Three, p. 29.) The plaintiffs' contention in this regard is without merit for three reasons:

First, the case of the Savannah Union Station Co., Abandonment, F.D. 21499 (May 2, 1962), upon which the plaintiffs rely, was a case of a total abandonment where protective labor conditions were imposed. Therefore, the Commission clearly does not have an absolute per se rule against the imposition of such conditions in total abandonment cases; in fact, the very language of the Commission's report which the plaintiffs cite in support of their contention is the conclusion of the Commission's attempt to distinguish the Savannah Union Station case.

Second, there is much language in the Commission's report indicating that it did consider the evidence on whether protective labor conditions should be imposed and, after such consideration, exercised its discretion to deny them. For instance, the sentence preceding the one upon which the plaintiffs rely reads: "Here we have no such relationship (referring to the Savannah Union Station

case), nor is there any evidence of record of circumstances making the imposition of protective labor conditions reasonable and in the public interest." The Supreme Court, more than twenty years ago, announced the standards which an agency must meet in this regard: "All we ask of the Board is to give clear indication that it has exercised the discretion with which Congress has empowered it." Securities and Exchange Comm. v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1942). The Commission's decision herein meets that standard.

Third, in oral argument the plaintiffs appear to have abandoned this contention.

In view of these three factors, the plaintiffs' attack upon the Commission's decision based on the thesis that the Commission failed to exercise its discretion cannot be sustained.

█ Another facet of the attack upon the Commission's finding in regard to the imposition of labor conditions is the claim that the Commission failed to set out sufficient findings of fact to support its refusal to impose such conditions.

To support this contention, plaintiffs rely on Title 5 U.S.C.A. § 1007(b), which in relevant part states:

"All decisions * * * shall * * include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record; and (2) the appropriate rule, order, sanction, relief, or denial thereof."

This Court has already determined that the technical requirements of Title 5 U.S.C.A. § 1007, were inapplicable to this proceeding because there was no statutory requirement of a hearing. See the discussion with regard to the omission of the hearing examiner's report, supra.

However, even if Section 1007 applied to this proceeding, the report of the Interstate Commerce Commission meets all of the requirements of the Act. That report discusses the factors which the Commission believed had justified the imposition of protective labor conditions in the Savannah Union Station case, and found those conditions absent in this proceeding. It furthermore found that there was no evidence of record which would warrant such imposition.

Plaintiffs contend that these statements of the Commission were mere conclusions and that the Commission failed to set out the facts upon which those conclusions were based. But the Commission, by finding that there was no evidence to warrant the imposition of such conditions, necessarily found that there were no facts which would justify imposition of protective conditions. Plaintiffs have not been able to demonstrate how the Commission could have set out facts which it found did not exist.

The real essence of the plaintiffs' contention is that the Commission is obligated to impose conditions unless it sets forth facts to support its reasons for refusing to do so. In other words, plaintiffs are trying to place the burden of proof upon the Commission. No authority has been cited which holds that conditions must be imposed absent a reason for refusing them. And the contention that the burden was on the Commission to show why conditions should not be imposed appears to be contra to Title 5 U.S.C.A. § 1006(c), which provides that "Except as statutes otherwise provide, the proponent of a rule or order shall have the burden of proof."

As a matter of fact, the Commission's decision in this case contains numerous factual findings, and counsel for the plaintiffs so admitted at the oral hearing.

Thus, the plaintiffs' contention is reduced to the claim that the Commission did not address each specific finding to this specific argument of the plaintiffs. We think that the language contained in Securities and Exchange Comm. v. Chenery Corp., supra, while written before the passage of the Administrative Procedure Act, is appropriate in this instance. There the Court said, 318 U.S. at page 95, 63 S.Ct. at page 462, "We

are not suggesting that the Commission must justify its exercise of administrative discretion in any particular manner or with artistic refinement. We are not sticking in the bark of words."

The plaintiffs' contention that the Commission failed to set out sufficient findings of fact to support its refusal to impose protective labor conditions is not supported either by the law or by the record, and its motion to set aside the order of the Commission upon this basis will be denied.

We have carefully considered the other contentions made by the plaintiffs and find them to be without merit.

An order may be drawn dismissing the complaint and continuing in effect the stay order of April 29, 1963.